56 So.2d 509 (1952)
SEABOARD AIR LINE R. CO.
v.
MARTIN.
Supreme Court of Florida, Division B.
January 4, 1952.
Rehearing Denied February 18, 1952.
*511 Charles R. Scott, William L. Durden and Fleming, Jones, Scott & Botts, all of Jacksonville, for appellant.
Brannon & Brown, Lake City, and Howell & Howell, Jacksonville, for appellee.
MATHEWS, Justice.
This appeal involves an accident at a railroad crossing approximately 2 miles West of Live Oak, Florida. The single track railroad line runs East and West. Approximately 140 feet South and parallel to the tract runs the U.S. Highway 90, which goes from Tallahassee to Jacksonville. There runs a clay, or dirt, road about 126 feet to the North of the railroad tracks and parallel thereto, which was a part of the old highway from Jacksonville to Tallahassee. This road intersects at right angles with a road known as the Nobles Ferry Road, and is near to what is known as Blue's Lodge. The plaintiff and her deceased husband occupied a home to the North of the old Tallahassee Highway, and approximately 1,896 feet to the West of Nobles Ferry Road. Blue's Lodge is approximately 2,036 feet to the East of the Nobles Ferry Road. There was the usual standard railroad arm sign saying: "Railroad Crossing  Look Out For the Cars", where the Nobles Ferry Road crossed the railroad tracks.
The accident occured between 7:15 and 7:30 A.M., on Monday, July 10th, 1950. It was daylight at the time, the weather was foggy and misty and there may have been some rain.
The train involved was named the Gulf Wind and was going East toward Live Oak. It was powered by an oil-burning, steam locomotive. Mr. Martin, the deceased, was 45 years of age and was familiar with the crossing. He was driving along in a 1939 Ford pickup truck. He left his home and drove East on the dirt road parallel to the railroad tracks until he got to Nobles Ferry Road, where he turned at right angles to the right and proceeded toward the crossing. There was an empty 60-gallon drum on the body of the pickup truck which made some noise. The deceased never increased, nor decreased, the speed of his truck from the time he turned right on Nobles Ferry Road until the accident. The right front of the train struck the right rear of the truck and the accident resulted in the death of Mr. Martin. The train never stopped until it got up around Blue's Lodge, which was approximately 2,000 feet from the crossing.
More than a dozen witnesses testified in the case. There were some conflicts in the testimony as is usual in a case of this kind. Various witnesses testified as to the speed of the train and they varied from the lowest speed of 45 miles per hour to the highest of 80 miles per hour. There was conflicting evidence as to whether or not the bell was ringing and the whistle had been blown. There was a cardboard obstruction over a portion of the window through which the engineer of the train looked ahead. The engineer testified that he could not see the left handrail at any point within 250 feet in front of the engine. He could see the right handrail from about 50 to 60 feet in front of the engine. He never did see the truck. He testified that the fireman gave him a hand signal when he was only 100 feet from the crossing and it would have done no good to make an emergency application of the brakes because he had already applied the surface application. He admitted that the train would go 780 feet in 10 seconds, if traveling at 50 miles per hour.
The fireman testified that when the train was approximately 1600 feet from the crossing it was going 60 miles per hour and was going 50 miles per hour when it passed over the crossing. He saw Mr. Martin driving down the dirt road and turn right onto the Nobles Ferry Road going about 16 or 17 miles per hour. When Martin got within 25 or 30 feet from the crossing "it looked like he might not stop". He then hollered to the engineer to attract his attention and gave him a hand signal. It was "10 or 12 seconds" after he gave the hand signal to the engineer that the car came on the crossing.
The testimony, other than the train crew, consisted of some people who were engaged in road construction and neighbors who lived in the community. It is unnecessary to recite the details of the testimony *512 of these various witnesses. There were sharp conflicts as to the blowing of the whistle, the ringing of the bell, the speed of the train, and how far the train was from the crossing when Mr. Martin was first observed approaching the crossing by members of the train crew. The jury and the trial Judge heard all of this testimony, they saw the witnesses on the witness stand, and observed their demeanor. It was the duty of the jury to pass upon the credibility of the witnesses, harmonize conflicts in the testimony wherever possible, and to believe the testimony of such witnesses, or set of witnesses, as they believed to be true. The jury performed its duty and rendered a verdict against the appellant, thus settling all conflicts in the testimony as to liability. This it had a right to do.
The trial Judge who observed the witnesses and heard the testimony refused to grant a new trial upon the merits of the case. As to the merits of the case and the liability of the appellant, upon such conflicting testimony, this Court will not substitute its judgment for that of the jury and of the trial Judge. There was abundant evidence, if believed by the jury, to justify a verdict against the appellant.
It is the contention of the appellant that the following charge given by the Court is reversible error: "If you find, from a preponderance of the evidence, that the defendants were guilty of negligence which proximately contributed to causing the collision between the train and the truck, then the fact, if you so find it, that the plaintiff's deceased husband, Mr. Martin, could have seen the approaching train if he had halted before reaching the track or had looked as he approached it, would not entitle the defendant railroad company to a verdict of not guilty upon the ground that the negligence of Mr. Martin was a proximate cause, or the sole proximate cause, of the collision and of his death."
The giving of this charge was one of the grounds of a motion for a new trial. In his order on the motion for new trial, the trial Judge said: "Upon consideration of said defendant's motion for a new trial the Court is of the opinion that the charge given by the Court as set forth in ground numbered 32 was erroneous, but the Court is further of the opinion that when said complete charge is considered the error was cured and the jury was not misled."
We have read the entire charge given by the trial Judge and we agree with him that if error was commited, it was cured and the same became harmless.
The appellant contends, with reference to the "last clear chance doctrine", no charge should have been given by the court, because it does not apply where the doctrine of comparative negligence avails, as in this case. The doctrine of last clear chance and contributory and comparative negligence are closely related, but upon close analysis of the cases, are clearly distinguishable. In the case of Merchants' Transp. Co. v. Daniel, 109 Fla. 496, 149 So. 401, 403, this Court said: "The last clear chance doctrine is not an exception to the general doctrine of contributory negligence. It does not permit one to recover in spite of his contributory negligence, but merely operates to relieve the negligence of a plaintiff or deceased in a particular instance, which would otherwise be regarded as contributory, from its character as such. This result it accomplishes by characterizing the negligence of the defendant, if it intervenes between the negligence of plaintiff or deceased, and the accident, as the sole proximate cause of the injury, and the plaintiff's antecedent negligence merely as a condition or remote cause. The antecedent negligence of the plaintiff or deceased having been thus relegated to the position of a condition or remote cause of the accident, it cannot be regarded as contributory, since it is well established that negligence, in order to be contributory, must be one of the proximate causes.".
In this kind of a case under the Statute contributory negligence is not a complete bar to recovery. When it appears, the doctrine of comparative negligence is applied, and then the last clear chance doctrine comes into being, if the evidence so warrants, as it does in this case.
There was ample evidence in the record to support a charge with reference to the last clear chance.
*513 The fireman on this train testified that he saw the deceased driving down the dirt road parallel with the tracks, going 16 or 17 miles per hour. He saw him when he turned at right angles onto the Nobles Ferry Road going at the same speed; he saw him when he got within 25 or 30 feet of the crossing and it looked like "he might not stop". He then hollered to the engineer to attract his attention and gave him a hand signal. He further testified that it was between 10 and 12 seconds after he gave the hand signal to the engineer that the car came on the crossing. The engineer testified that if the train was traveling at 50 miles per hour, it would go 780 feet in 10 seconds. The jury had a right to believe this testimony. It was testimony offered by the appellant. Certainly the jury had a right to believe that the engineer could have and should have done something within this several hundred feet to have further reduced the speed of the train. The train almost missed the truck and the difference of a split-second meant the difference between life and death. This testimony was sufficient upon which to base a charge with reference to the last clear chance.
Appellant next contends that there was no sufficient evidence upon which the jury could assess damages. Damages in cases of this kind cannot be reduced to a mathematical certainty. If the theory of the plaintiff should be carried to its ultimate conclusion, there would be cases where the widow could recover no damages for the death of a husband because of the absence of certain and definite testimony as to the exact earnings of the deceased. No such strict rule is required. The material part of the testimony with reference to damages was gross receipts received for cash crops; that he had no interests away from home; he had been a farmer all his life; he owned 214 acres of land and various outbuildings located thereon; he owned a tractor, a wagon and a mule; prior to his death, he had under cultivation 10 acres of watermelons; he owned some cows and some chickens and the farm produced most of the food for his family table; deceased was 41 years of age and in good health; deceased and the plaintiff had two (2) children, and the deceased was of material assistance in rearing and training the children; he was a good husband and father. With reference to damages as applied to a widow in a case like this, the opinion in the case of Dina v. Seaboard Air Line Ry. Co., 90 Fla. 558, 106 So. 416, 417, is still the law in this state. In that opinion this Court said: "The widow's claim for damages for the death of her husband by the wrongful act of another is based on the following elements: (1) Her loss of the comfort, protection, and society of the husband in the light of all the evidence in the case relating to the character, habits, and conduct of the husband as such. (2) The marital relations between the parties at the time of and prior to his death. (3) His services, if any, in assisting her in the care of the family. (4) The loss of support which the husband is legally bound to give the wife, and which is based on his probable future earnings and other acquisitions. (5) The station in society which his past history indicates that he would probably have occupied and his reasonable expectations in the future, such earnings and acquisitions to be estimated upon the basis of deceased's age, health, business capacity, habits, experience, and energy, and his present and future prospects for business success at the time of his death  all of these elements to be based upon the probable joint lives of the widow and husband. (6) She is also entitled to compensation for loss of whatever she might reasonably have expected to receive in the way of dower or legacies from her husband's estate in case her life expectancy be greater than his  the sum total of all these elements to be reduced to a money value, and its present worth to be given as damages."
No one can say with mathematical certainty what the exact amount of damage is because of; marital relations between the parties; his services to his wife, and children; his services to his wife in assisting her in the care of the children; his probable future earnings; the station in life, which his past history indicates that he would probably have occupied; and his reasonable expectations in the future. His *514 earnings and acquisitions are to be estimated upon the basis of his health, age, business capacity, habits, experience and energy. These questions are left to the determination of the jury. The Court correctly charged the jury with reference to damages and there was sufficient evidence upon which the jury could fix the damages.
In its order on motion for new trial the Court said:
"Ordered and Adjudged that said motion for new trial be, and the same is, hereby granted on grounds numbered 5, 6 and 9 and the verdict rendered herein and the judgment entered in the records of this Court upon the said verdict are hereby severally vacated and set aside, and a new trial is hereby granted to the said defendant, Seaboard Air Line Railroad Company, a corporation, unless the plaintiff shall within 10 days from the date of this order enter and file a remittitur in the sum of $35,000 reducing the judgment in this cause to the sum of $40,000.
"If the plaintiff shall within the said 10 day period enter and file the said remittitur then in such event the said motions for new trial of the said defendant Seaboard Air Line Railroad Company, a corporation, shall at the expiration of said 10-day period stand denied, and in that event final judgment in favor of the plaintiff and against the said defendant, reduced to the said sum of $40,000, shall stand and remain in force as of the date when the said judgment was originally rendered."
The appellant contends that this part of the order is reversible error because it reveals that the liability of the defendant was not clearly established and demonstrates that the verdict of the jury was influenced by passion and prejudice and, therefore, a new trial on all issues should have been granted unqualified by a remittitur.
We have reviewed the entire record and are of the opinion that the trial court exercised a sound discretion and committed no reversible error by this part of the order. There is nothing in the record to indicate passion or prejudice unless it be said that the natural sympathy for all mankind for a widow under like circumstances is passion and prejudice. Should any such doctrine be adhered to, it would be impossible for any case to be fairly tried where a widow was suing for the wrongful death of her husband. It may be that the amount of the verdict was influenced by natural sympathy for a widow who had two minor children to rear and support, but if such be the case, whatever injustice was done, or error committed, as to the amount of the verdict, has been wisely remedied by the trial Judge in the exercise of a sound discretion.
We have carefully considered this record, the briefs filed, the argument of counsel, and all other assignments of error by the appellant, and each of them severally is without merit.
The appellee filed a cross assignment of error with reference to the order on motion for new trial, wherein the order stated: "* * * unless the plaintiff shall within 10 days from the date of this order enter and file a remittitur in the sum of $35,000 reducing the judgment in this cause to the sum of $40,000."
After the entry of the order on motion for new trial, the appellee did enter and file a remittitur in the sum of $35,000. The appellee cannot "have its cake and eat it too".
There is no merit in the cross assignment of error. See Pensacola Gas Co. v. Pebley, 25 Fla. 381, 5 So. 593, and Florida East Coast Ry. Co. v. Buckles, 83 Fla. 599, 92 So. 159.
Affirmed.
SEBRING, C.J., and CHAPMAN and ROBERTS, JJ., concur.