270 So.2d 359 (1972)
SEABOARD COAST LINE RAILROAD COMPANY, Petitioner,
v.
Carolyn HILL, As Widow of Lester George Hill, Jr., Respondent.
No. 41472.
Supreme Court of Florida.
November 8, 1972.
Rehearing Denied January 12, 1973.
Manley P. Caldwell and Arthur E. Barrow of Caldwell, Pacetti, Barrow & Salisbury, Palm Beach, and Charles S. Ausley, Tallahassee, for petitioner.
William Frates, II, of Beverly & Frates, West Palm Beach, for respondent.
Edward S. Corlett, III, of Corlett, Merritt, Killian & Okell, Miami, and A. Frank O'Kelley, of Keen, O'Kelley & Spitz, Tallahassee, for Florida Defense Lawyers Association.
Robert Orseck, of Podhurst, Orseck & Parks, Miami, for Academy of Florida Trial Lawyers, as amici curiae.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Fourth District, reported at 250 So.2d 311, a decision certified as passing upon a question of great public interest, to-wit:
"Whether or not, in a wrongful death action under Section 768.02, F.S. 1969, [F.S.A.], brought by one spouse to collect damages resulting from the wrongful death of the other spouse, evidence (sic) to plaintiff's remarriage is admissible to mitigate damages."
*360 Plaintiff, respondent herein, brought suit against defendant railroad, petitioner herein, for the wrongful death of her husband allegedly due to the negligent operation of defendant's train through a highway crossing in the City of Clewiston, Florida. The jury returned a verdict for the plaintiff and assessed her damages at $220,000.00. Final judgment was entered pursuant to the jury verdict and the defendant appealed.
The District Court reviewed each of the seven points raised by the railroad on appeal and found them to be without merit. The seventh point raised concerned the admissibility of evidence of the widow's remarriage subsequent to the accident. Defendant tendered evidence that the plaintiff had remarried three times subsequent to the death of her first husband and prior to the trial. Objection to the tendered evidence was sustained by the trial court. The District Court affirmed holding in pertinent part as follows:[1]
"The only possible relevance of such evidence would be to the issue of damages. When the damages available to a widow suing for the wrongful death of her husband are properly understood, it appears that evidence of remarriage is irrelevant. The wrongful death act, Section 768.02, F.S. 1969, provides, `... In every such action the jury shall give such damages as the party or parties entitled to sue may have sustained by reason of the death of the party killed... .' (Emphasis added.) Under the statute and the case law interpreting it, the widow's recoverable damages are all losses occasioned by her husband's death. See Seaboard Air Line R. Co. v. Martin, Fla. 1952, 56 So.2d 509. It, therefore, follows that such damages are not subject to mitigation because their source is the husband's death. Although the hardship imposed upon the widow by her husband's death may be alleviated by a second marriage, the damages flowing from the death of the first husband are in nowise affected. Some support for this conclusion may be found in the case of Florida Cent. & P.R. Co. v. Foxworth, 1899, 41 Fla. 1, 25 So. 338, 348, wherein the Florida Supreme Court held that in estimating a widow's loss of society by reason of the wrongful death of her husband, a jury might consider all the evidence relating to the marital relationship at and prior to the time of death.

"* * *
"There is another rationale which would support the conclusion that the evidence of remarriage and the benefits flowing therefrom cannot be used to mitigate damages by reason of the wrongful death. It has been held in a number of Florida cases that a wrongdoer cannot diminish his damages by evidence of benefits flowing to the claimant from an independent collateral source. See for example Wadsworth v. Friend, Fla.App. 1967, 201 So.2d 641, wherein the Fourth District held that damages for wrongful death are based on pecuniary loss calculated as of the time of death and that evidence of the amount of funds received from a collateral source after the death of plaintiff's decedent was not admissible to mitigate damages claimed by plaintiff. In that particular case, the plaintiff was a forty-two-year-old woman dependent on her mother who was killed in an automobile accident with the defendant. After the mother's death, the plaintiff's estranged husband paid her $14,800.00 as a settlement in lieu of alimony. Evidence as to the amount of this settlement was held inadmissible for purposes of mitigating the plaintiff's damages for loss of her mother's support.
"In O'Neal v. Ray, Fla.App. 1968, 213 So.2d 1, a wrongful death suit by minor children based upon the death of their father, it was held error to admit for *361 purposes of mitigating damages, evidence of the fact that the minors received veteran's and social security benefits by reason of their father's death. See also Frazier v. Ewell Engineering and Contracting Co., Fla. 1952, 62 So.2d 51, wherein it was held that a widow's pension of $42.00 per month received on account of her husband's death was not deductible from the value of her lost support consequent on the death of her husband.
"We conclude both on the basis of the nature of damages recoverable under the statute and the collateral source rule that evidence of a subsequent remarriage was inadmissible."
The District Court in its opinion has correctly answered the question certified. In Florida and by the overwhelming weight of authority,[2] evidence of remarriage of the plaintiff prior to trial in a suit for the wrongful death of a spouse is not admissible. We are not here called upon to decide the effect of the new wrongful death act, effective July 1, 1972.[3]
Accordingly, writ of certiorari is discharged.
It is so ordered.
ROBERTS, C.J., and ERVIN and ADKINS, JJ., concur.
DEKLE, J., dissents with opinion.
DEKLE, Justice (dissenting):
I cannot concur in the proposition set forth in the District opinion for affirming the disallowance by the trial judge of evidence of the survivor's remarriage in a suit for the wrongful death of her husband. The statement of the district court is that the natural hardship resulting "may be alleviated by a second marriage" but then proceeds to conclude that "the damages flowing from the death of the first husband are in nowise affected." I cannot grasp this logic. The widow's changed status may be affected "for better, for worse; for richer, for poorer", as her new marriage vows express it.
The rapid fire of three successive marriages within four years after what may well have been a very successful one to her deceased husband would really seem to demonstrate the gravity of the loss of a very fine husband and mate. It also may not, depending upon all of the evidence and the jury's finding, but that is just the point; it is a matter for the jury to weigh with all of the evidence in reaching its conclusion as to the extent of the loss.[1]
The district opinion refers to "the only possible relevance" of evidence of remarriage as being "the issue of damages" and then concludes that such evidence is irrelevant. The extent of the widow's loss of the comfort, protection and society of the husband and a consideration of the marital relations between those parties and his services in the care of the family are elements of damages set forth in Dina v. Seaboard Air Line Ry. Co., 90 Fla. 558, 106 So. 416 (1925), and Seaboard Air Line Railroad Co. v. Martin, 56 So.2d 509 (Fla. 1952). In addition is the very important item of loss of support, if any. All of these losses are of necessity either diminished or accentuated by the "substitution" of a new husband (or husbands). Obviously, these items of damages which she alleges are being suffered are to be weighed in assessing the extent of such losses. They are weighed in other such damage claims. And they cannot be correctly *362 assessed in a vacuum. The jury should not be deprived of the facts bearing on the extent of the loss. If they are, then the scales of justice cannot render a fair and correct weight. Assuredly, the jury should not be presented, as it was here, with what is really not a true picture of the existing situation and asked to participate in a charade.
The lower court ordered that the respondent would be referred to by the name of "Hill" during the trial. The Court further instructed counsel that "Mrs. Hill's" remarriages should be concealed from the jury although at the time of the trial she was then married to James Hendry, her third husband since the accident.
A law suit must be tried in an atmosphere of truth. The witnesses are sworn to tell the WHOLE truth. We recognize that certain evidence must be withheld from consideration when it is truly irrelevant or so prejudicial as unfairly to affect the trial and a fair consideration of the evidence which is relevant. However, we cannot conjure up a fictitious set of circumstances for a jury to evaluate and withhold the true facts. This case comes very close to being such a situation when we see that the entire matter was submitted (for all the jury knew) as a case of a poor grieving widow, alone in the world without her husband, suffering the elements of damages being claimed and without any consideration as to what the true situation was, against which such damages must of necessity be measured. In some unfortunate cases it may be that a widow is actually well off without the sorry husband she had but whatever his character and habits were, they should be properly considered either way. The ultimate loss to her may not be so great if her place in life and standards are thereby improved by the loss, as unfortunate as the loss of any life may be. The deceased husband was an employed barber in Clewiston, Florida, whereas the new husband enjoyed a more beneficial position in the community. After all, we are dealing with dollars here and the understandable sentiment as to the loss of the husband's life should not outweigh a fair evaluation of the true loss to the widow. To the extent that we repress truth we correspondingly demean justice.
The "widow" was presented as the widowed "Mrs. Hill" instead of by her current married name, just as if no new marriage had intervened. Tactical advantage was naturally pursued by "Mrs. Hill's" able counsel on her behalf at the trial in saying:
"Mrs. Hill ain't got anybody to mow the yard, ain't got anybody to babysit with those boys while she goes to the grocery store, hasn't got anybody around the house to do all the things that a man is designed to do when he undertakes the responsibility of a husband and a father."
This simply was not true because as the current Mrs. Hendry she had Mr. Hendry as her "yard man", "babysitter" and companion. Can it therefore be fairly said that she had lost such services of her former husband beyond the point at which she acquired another, except to the extent that the new husband may not measure up?
The collateral source rule urged by respondent "widow" is not overlooked; it cannot fairly apply to the extent of depriving the jury of a consideration of those extenuating facts which may affect the elements of damages involved, in measuring the extent of the loss of companionship, society, etc. So long as we have monogamy as the standard under our system of jurisprudence, then consistent therewith, we cannot at the same time have "bigamous" bases for recovery under a formula of two or more husbands. We have said that we are entitled to only one husband or one wife at the time; it follows that a plaintiff is entitled to only one source of conjugal comfort, one set of services, etc., at any one time, measured by the pattern which she enjoyed, past and present. Alimony normally stops upon the remarriage of the wife. The collateral source rule would of course apply as to insurance from *363 the former husband, social security benefits inuring to the survivor and children and similar like remunerations for which a consideration had previously been paid. It is this factor of a paid consideration that basically gives rise to the collateral source rule, as in the case of additional insurance premiums for another policy and like situations, rather than mere "windfalls".
Consistent with this view of measuring damages in light of present circumstances are all of the cases for personal injury and other negligence situations. Injuries and accidents are of course judged by that which takes place beginning at the time of occurrence but progressing and continuing or changing until the time a law suit is heard when all of the circumstances are presented with regard to the prognosis and immediate past.
All of the elements sought to be recovered here are necessarily future in nature, as occurring after the event. It therefore seems clear to me that the true evidence bearing on appellee's claimed losses should be submitted for a jury's evaluation. Truth and justice are thereby served.
I would reverse and remand for a new trial on damages.
NOTES
[1] Seaboard Coast Line Railroad v. Hill, 250 So.2d 311, 316-317 (Fla.App.4th 1971).
[2] "Remarriage of surviving spouse, or possibility thereof, as affecting action for wrongful death of deceased spouse", 87 ALR 2d 252 (1963).
[3] Fla.Session Law, Ch. 72-35 (March 8, 1972): "(c) Evidence of remarriage of the decedent's surviving spouse is admissible."
[1] New Fla. Stat. Ch. 72-35, § 768.21(6) (c) expressly permits evidence of remarriage for deaths occurring beginning July 1, 1972 (subsequent to the death in the case at bar).