332 So.2d 655 (1976)
Myles SMYER, Appellant (Defendant),
v.
Henry M. GAINES, As Administrator of the Estate of Lilly M. Gaines, Deceased, Appellee (Plaintiff).
No. W-502.
District Court of Appeal of Florida, First District.
June 3, 1976.
*656 Robert P. Gaines of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Fredric G. Levin of Levin, Warfield, Middlebrooks, Graff, Mabie, Rosenbloum & Magie, Pensacola, for appellee.
MILLS, Judge.
Smyer appeals from a final judgment based on a jury verdict awarding damages to Gaines, as the surviving husband of and as administrator of the estate of his deceased wife, and to his deceased wife's parents in a wrongful death action brought *657 under the Florida Wrongful Death Act, effective 1 July 1972.
The issues raised by the appeal are:
1. Whether, in a wrongful death action, the remarriage of the surviving spouse should be considered by the jury in mitigation of damages claimed for the loss of support and services of the deceased spouse.
2. Whether, in a wrongful death action, a condition to recovery of damages by the parents for loss of decedent's services is that the parents incur the expense of replacing the lost services.
3. Whether the verdict for the decedent's spouse, estate and parents was excessive.
Gaines' wife was killed in a collision between a car driven by her and a car driven by Smyer. Gaines was appointed as administrator of the estate of his deceased wife. He filed a wrongful death action against Smyer seeking damages as the surviving husband, as administrator of the estate, and on behalf of the surviving parents. Smyer admitted liability for the death of Mrs. Gaines.
Several days before the trial Gaines remarried. Evidence of his remarriage was submitted to the jury.
The parents of Mrs. Gaines adduced testimony that their deceased daughter performed, with reasonable regularity, many duties of a household nature for them, but they did not replace these services with hired help.
Although the Florida Wrongful Death Act provides that evidence of remarriage of the decedent's spouse is admissible, there is neither legislative history nor case law which would indicate the purpose for which this evidence is admitted.
The court instructed the jury that:
"In this case the surviving spouse, Henry Gaines, has remarried. The evidence of remarriage can only be considered by you as it might affect the loss of companionship and protection and mental pain and suffering of the surviving spouse. It shall not be considered by you in mitigation of any of the other elements of damage."
Smyer does not object to the instruction as given by the court, but argues that the instruction did not go far enough. He contends that evidence of remarriage should be considered by the jury in mitigation of all the elements of damage. Therefore, the court erred in failing to instruct the jury that it should also consider the evidence of Gaines' remarriage in mitigation of his loss of support and services of his deceased wife. Gaines concedes that evidence of remarriage is admissible under the new Florida Wrongful Death Act. However, he argues that public policy, the collateral source doctrine, and legislative intent all limit the purpose for which the evidence can be introduced.
The Florida Wrongful Death Act was originally proposed by the Florida Law Revision Commission, and its recommended act was for the most part passed as recommended. However, the recommended act did not include the subsection on the admissibility of remarriage. This was added to the recommended act by the legislature. Obviously, the legislature could have inserted the provision providing for evidence of remarriage anywhere in the act. Therefore, the placement of this provision within the act would be of prime importance in determining legislative intent.
Section 768.21, Florida Statutes:
"Damages.  ... Dangers may be awarded as follows:
(1) Each survivor may recover the value of lost support and services ...
(2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental *658 pain and suffering from the date of injury.
(3) Minor children of the decedent may also recover for lost parental companionship, ...
(4) Each parent of a deceased minor child may also recover ...
(5) Medical or funeral expenses ... may be recovered by a survivor who has paid them.
(6) The decedent's personal representative may recover for the decedent's estate the following:
(a) Loss of earnings of the deceased from the date of injury to the date of death, ... If the decedent's survivors include a surviving spouse or lineal descendants, loss of net accumulations beyond death and reduced to present value may also be recovered.
(b) Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent, excluding amounts recoverable under subsection (5).
(c) Evidence of remarriage of the decedent's spouse is admissible.
(7) All awards for the decedent's estate are subject to the claim of creditors... ." (Underlining added)
Since the legislature could have included the evidence of remarriage under any section of the act, it is significant to note that it chose to place it merely as a subsection under the recovery for the decedent's estate. This would indicate that the evidence of remarriage is not to mitigate the damages of the surviving spouse. This interpretation would fit the collateral source doctrine, the public policy of Florida, and the legislative intent of the Wrongful Death Act.
Damages for wrongful death may not be reduced by amounts received by beneficiaries as compensation from a collateral source. Wadsworth v. Friend, 201 So.2d 641 (Fla.App. 4th, 1967).
The placement in the act of subsection (6) (c) of Section 768.21, Florida Statutes, "Evidence of remarriage of the decedent's spouse is admissible", indicates that there are only two purposes for which the evidence could be used: (1) it could mitigate the damages going to the decedent's estate from the loss of net accumulation, since the loss of net accumulation can only be regained by the estate when there is a surviving spouse or lineal descendants; (2) rather than to mitigate any damages, the evidence could be introduced for the sole reason of allowing the truth to be known and to keep the court from having to participate in a fraud upon the jury. In Seaboard Coastline Railroad Company v. Hill, 270 So.2d 359 (Fla. 1972), the dissent stated:
"... Assuredly, the jury should not be presented, as it was here, with what is really not a true picture of the existing situation and asked to participate in a charade.
......
"A law suit must be tried in an atmosphere of truth. The witnesses are sworn to tell the WHOLE truth. We recognize that certain evidence must be withheld from consideration when it is truly irrelevant or so prejudicial as unfairly to affect the the trial and a fair consideration of the evidence which is relevant. However, we cannot conjure up a fictitious set of circumstances for a jury to evaluate and withhold the true facts... ."
Section 768.17, Florida Statutes, provides:
"It is the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer... ."
Virtually all of the American jurisdictions, with the exception perhaps of Mississippi *659 and Wisconsin, have ruled that the surviving spouse's remarriage does not affect the damages recoverable in actions for the wrongful death of the deceased spouse. There are two reasons for this rule: (1) the cause of action arises at the time of the decedent's death, and the damages are determinable as of that time; and (2) the rule providing for mitigation of damages on account of the surviving spouse's remarriage is highly speculative, because it involves a comparison of the prospective earnings, contributions and services of the deceased spouse with those of the new spouse. However, in many jurisdictions the evidence of the remarriage is admissible, but cannot be used to mitigate damages. 87 A.L.R.2d 252-253.
In our judgment, evidence of remarriage of the decedent's spouse is admissible so that the whole truth be known. It may not be considered in mitigation of any elements of damage recoverable under the act by the surviving spouse. Therefore, the court did not err in refusing to instruct the jury that it should consider the evidence of Gaines' remarriage in mitigation of his loss of support and services of his deceased wife. Although the court erred in giving the instruction which is set forth above, Gaines has not cross-assigned this as error; therefore, a reversal is not required.
Section 768.18, Florida Statutes, defines "survivors" as including a decedent's parents.
Section 768.21(1), Florida Statutes, states that each survivor may recover the value of lost support and services. This section further states that in evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered.
Section 768.18, Florida Statute, defines services as meaning "tasks, usually of a household nature, regularly performed by the decedent that will be a necessary expense to a survivor of the decedent. The services may vary according to the identity of the decedent and survivor and shall be determined under the particular facts of each case."
The same section defines support as including "contributions in kind as well as money."
The major thrust of Smyer's argument is that no evidence was presented that the parents had incurred any "necessary expenses" to replace the services provided by their daughter. Smyer argues that the statute specifically requires that the task be regularly performed and that there be a necessary expense to the survivors arising from the loss.
In the recommendations and report on the Florida Wrongful Death Act prepared by the Florida Law Revision Commission, it was noted that the most serious defect in the prior wrongful death law was that there as a strict hierarchy of beneficiary classes and that the cause of action vested exclusively in the highest beneficiary class. Under this scheme, if there was a surviving spouse neither minor children nor other dependent persons could be compensated for their losses. However, damages for all three classes were computed according to the loss to survivors theory. The Florida Law Revision Commission notes that the new act would expand the loss to survivors theory of damage. Under the new theory, "A spouse and all blood relatives dependent in whole or in part upon the decedent should be allowed to recover the full value of lost support and services." It does not appear that the measure of damages for lost support and services was intended to be changed by the new law. It would seem, therefore, that prior case law dealing with loss of support and services would still be applicable under the new statutes.
*660 In Smith v. Whidden, 87 So.2d 42 (Fla. 1956), the court stated:
"... In a case such as this where the nature of the wife's services is shown by the evidence and it is established that the husband has lost such services because of the death of his wife ..., he is entitled to recover, insofar as reasonably measurable, the value of that which the defendant's negligence has deprived him of enjoying. It is not essential as a condition to recovery that he immediately hire someone to render the service. It is sufficient to prove that he had previously enjoyed the service and had been deprived of it by the negligence of the defendant... ." (Underlining added)
Under the new act, the surviving spouse and all other dependent blood relatives are to receive compensation for the loss of services and support previously provided by the decedent. Just as it is not necessary for the surviving spouse to hire someone to render the services that the decedent previously had performed, it is also unnecessary for any other dependent to have to hire someone to perform those same services as a condition of recovery.
In his instructions to the jury, the Judge added the following statement at the end of the standard jury instruction:
"Where services are rendered gratuitously to the survivor, the defendant is not entitled to reduce the damages and the survivor is entitled to recover at the reasonable value of the lost services."
This instruction was unnecessary and may have confused the jury. However, the giving of this instruction is harmless error.
A carefully chosen jury heard the evidence presented by the skilled and expert counsel at a trial presided over by an experienced and knowledgeable judge, who declined to grant a new trial because of claimed excessiveness. It is our view that the verdict and judgment are supported by the evidence and law.
Therefore, the judgment is affirmed.
WILLIS, BEN C., Associate Judge, concurs.
BOYER, C.J., concurs specially.
BOYER, Chief Judge (concurring specially).
I concur in affirmance. I agree that the legislature wisely provided that evidence of remarriage of the decedent's spouse is admissible in wrongful death actions in order that the courts not be a party to a charade as mentioned in the majority opinion. I am anxious, however, that our opinion in this case not be construed as either a mandate or authorization for the trial court to negatively instruct a jury to the effect that the jury may not consider remarriage in mitigation of damages. I am also of the view that the opinion in this case should not be construed as a prohibition against defense attorneys arguing to the jury logical conclusions which may be drawn incident to damages or otherwise from remarriage by the surviving spouse.