DELL, Judge.
Appellant, Carmen 0. Cardona, personal representative of the estate of Diana Car-dona, appeals the final judgment in this medical malpractice, wrongful death action which awarded appellant $142,384 in damages against appellee, Lino Gutierrez, M.D. She also appeals the summary final judgment in favor of George Bone, M.D. and the award of attorney’s fees to Dr. Bone and St. Mary’s Hospital.
Appellant filed a wrongful death action against seventeen physicians, St. Mary’s Hospital, and various health care providers and professional associations. The trial court entered a summary final judgment in favor of George Bone, M.D., on appellant’s claims of negligence and false imprisonment and also awarded him attorney’s fees. St. Mary’s Hospital obtained a final partial summary judgment on two counts of appellant’s complaint, and later entered into a stipulation with appellant resolving the remaining issues against the hospital. The hospital, however, did not waive any claim to recover attorney’s fees on the issues resolved by the partial summary judgment. The trial court awarded the hospital $50,-000 for its attorney fees. We affirm the summary final judgment in favor of George Bone, M.D. and the award of attorney’s fees to Dr. Bone and to St. Mary’s Hospital.
The case proceeded to trial on appellant’s claims of negligence against Dr. Gutierrez, John Burigo, M.D. and Dr. Burigo’s professional association. Neither Dr. Burigo nor his professional association is a party to this appeal. The jury’s verdict found Dr. Gutierrez solely liable and awarded damages of $42,384 to the estate, $100,000 to Diana’s daughter, Kristeena, $25,000 to her mother, Carmen Cardona, and zero damages to Antolin Cardona, Diana’s father. The trial court granted Dr. Gutierrez’s motion for a setoff, amended the final judgment to a sum of $142,384 and denied appellant’s motion for a new trial on damages against Dr. Gutierrez.
In 1978, Diana, the third of five children, graduated from high school. She worked as a cashier and as a sales clerk and lived with her mother, Carmen Cardona, until she moved in with Alfredo Hernandez. She became pregnant and sometime before the delivery of her baby she moved back into her mother’s1 home. On July 20, 1982, the decedent, Diana Cardona, gave birth at St. Mary’s Hospital in West Palm Beach, to a daughter, Kristeena Cardona Hernandez. After the delivery, Diana began to hemorrhage. The physicians and medical personnel, in an effort to control her hemorrhaging, administered blood and plasma, medication and performed a hysterectomy and other surgery. Appellant asserted as one of the claims of negligence that appellee failed to timely administer proper treatment. Carmen Cardona came to the hospital every day after the delivery of Diana’s baby and it was she who brought the baby home. She then made arrangements with her sister to care for the baby and spent nights in the waiting room of the intensive care unit where she was allowed only short visits with Diana. As a result of continued bleeding and other related complications, Diana remained in the hospital until December 14, 1982, the date of her death.
Antolin Cardona, Diana’s father, testified that he visited Diana in the hospital every day. He continues to think of her every night. Carmen Cardona testified to the close relationship between Antolin Car-dona and their daughter. A friend of the Cardonas also testified concerning the impact of Diana’s death on both parents and the change in Carmen Cardona since her daughter’s death. In closing argument, *768 Dr. Gutierrez’s counsel suggested that the jury should award Carmen Cardona $50,000 and Antolin Cardona $25,000. The jury awarded $25,000 to Carmen Cardona and nothing to Antolin Cardona. Appellee has failed to point to any evidence, and we have found none, that would explain either verdict. We conclude from the evidence presented and the arguments of counsel that the awards to Antolin and Carmen Cardona were grossly inadequate and contrary to. the manifest weight of the evidence. See Griffis v. Hill, 230 So.2d 143 (Fla.1970); Massey v. Netschke, 504 So.2d 1376 (Fla. 4th DCA 1987); Perenic v. Castelli, 353 So.2d 1190 (Fla. 4th DCA 1977), cert. denied, 359 So.2d 1211 (Fla.1978).
Appellant also argues that the trial court erred when it denied her motion in limine and overruled her objection to appel-lee’s argument concerning the benefits and support that Kristeena would derive from living with her aunt and uncle. We find no support in the record for appellee’s contention that appellant failed to preserve this point for review. On the contrary, before closing argument, the following exchange occurred between appellant’s counsel and the court:
COUNSEL FOR APPELLANT: I’d like to submit this to Your Honor for his review on the motion in limine argument that we made yesterday.
THE COURT: Okay. Which pertains to arguing the adoption, arguing that in any way. I remember the argument. You didn’t want anything in reference to other persons who may supply other things for the survivor.
COUNSEL: For mitigating damages.
COUNSEL: I think you can get the flavor of our argument there and that’s supported in the Florida Supreme Court case that I provided to you, which is the Hill matter, which indicates, again, that these defendants are not entitled to take the benefit of these type of collateral sources in an attempt to mitigate damages or suggest to the jury that the jury should award a lesser amount of damages.
THE COURT: And of course the Supreme Court case is directed to evidence that was submitted as to the wife’s remarriage.
COUNSEL: [B]ut I think the important thing is the reasoning that the Supreme Court went through pertaining to the types of arguments that can be made which are legally improper and would be prejudicial.
THE COURT: The cases are — I’ve reviewed them and I am not changing my ruling on the motion in limine.
Appellee argued:
COUNSEL FOR APPELLEES: Lastly, we get down to Kristeena, and I think it’s spelled with a K — I’m not sure — who, yes, doesn’t have a mommy, or does she?
Care must be taken in what this little girl was told. That disturbs me. When Brenda was up here she told you she tried to explain to the little girl — Kristee-na Hernandez, and her name is Hernandez, by the way, it’s not Cardona — what happened to mommy. What has happened to mommy becomes a very delicate point. I think that the future holds great promise for that little girl because she was lucky to have an aunt like Brenda and an uncle like Robbie, who provide—
COUNSEL FOR APPELLANT: Excuse me, Your Honor, again I’m going to have to object based upon the previous argument that was made and the motion that was made.
THE COURT: Objection overruled.
COUNSEL FOR APPELLEES: A fine home is provided for her, a comfortable home, and the loss is going to have to be dealt with. What’s it worth? Perhaps $100,000. ■
Dr. Gutierrez’s counsel’s closing argument implied that Kristeena might be adopted by her aunt and uncle and that, at the very least, the future holds great promise for her since she will continue to have the benefit of their comfortable home. Clearly, the sum of these implications is analogous to the argument that a surviving spouse has married or may at some time in *769 the future remarry. In Smyer v. Gaines, 332 So.2d 655 (Fla. 1st DCA 1976), the district court pointed out that:
Virtually all of the American jurisdictions, with the exception perhaps of Mississippi and Wisconsin, have ruled that the surviving spouse’s remarriage does not affect the damages recoverable in actions for the wrongful death of the deceased spouse. There are two reasons for this rule: (1) the cause of action arises at the time of the decedent’s death, and the damages are determinable as of that time; and (2) the rule providing for mitigation of damages on account of the surviving spouse’s remarriage is highly speculative, because it involves a comparison of the prospective earnings, contributions and services of the deceased spouse with those of the new spouse. However, in many jurisdictions the evidence of the remarriage is admissible, but cannot - be used to mitigate damages. 87 A.L.R.2d 252-253.
In our judgment, evidence of remarriage of the decedent’s spouse is admissible so that the whole truth be known. It may not be considered in mitigation of any elements of damage recoverable under the act by the surviving spouse.
Id. at 658-59. We recognize that during appellant’s case, Kristeena’s aunt and uncle testified as to their relationship with Kris-teena and their love and affection for her. We reject appellee’s argument that the aunt and uncle’s testimony “opened the door” to the remarks made during closing argument. We find the facts of this case similar to those in Tito v. Potashnick, 488 So.2d 100 (Fla. 4th DCA), rev. denied, 494 So.2d 1152 (Fla.1986), in which this court reversed a jury verdict award of $188,575 in a wrongful death action brought on behalf of a three-year-old child for the death of his father. The court held:
There was not one scintilla of evidence to support the suggestion that the mother was going to be remarried and it cannot be presumed that attractive women always remarry. Indeed in the instant case the mother was not even married to the deceased father. More importantly, supposing the mother does choose another mate, and on that occasion legally marries him, there is no evidence whatever that this projected stepfather will adopt the child or obligate himself for the child’s support. Arguing facts not in evidence or not warranted from the evidence is impermissible. The defense insists on appeal that the child opened the door by repeatedly lamenting the loss of his father. However, we do not believe the quoted comment was permissibly responsive.
Id. at 101 (citations omitted). We hold, as did the court in Tito, that appellee’s remarks were inflammatory and prejudicial to Kristeena’s claim for the loss of services and support of her mother and that she is entitled to a new trial on damages.
Since this case must be remanded for a new trial, we need not address appellant’s arguments based upon the trial court’s refusal to give an instruction on the collateral source rule and exclusion of expert testimony by both an economist and a psychiatrist. We recognize, however, that on retrial evidence may warrant a collateral source rule instruction. Accordingly, we reverse and remand this cause for a new trial against appellee Lino Gutierrez, M.D. on the damages claimed by Antolin Cardo-na, Carmen Cardona and Kristeena Hernandez. Appellant has not challenged the award of $42,384 to the estate, and we affirm that part of the verdict. We also affirm the summary final judgment in favor of, and the award of attorney’s fees to, appellee, George Bone, M.D., and the award of attorney’s fees to appellee, St. Mary’s Hospital.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
LETTS and WARNER, JJ., concur.