378 P.2d 926

**G. L. GIBBONS, Appellant,**

**v.**

**Earl C. WILLIAMS, Appellee.**

**No. 6587.**

Supreme Court of Arizona.

En Banc.

Feb. 20, 1963.

Evans, Kitchel & Jenckes, Phoenix, A. Michael Bernstein, Phoenix and George M. Wiener, Los Angeles, for appellant.

Henderson Stockton, Phoenix, for appellee.

PORTER MURRY, Superior Court Judge.

Appellant was plaintiff in a suit for damages for claimed fraudulent representations and concealments. The jury returned a verdict for the defendant in the principal action and for the full amount of his counterclaim. Plaintiff complains of the refusal of the trial court to give certain instructions.

Plaintiff had bought some property and wanted to make it into a cattle ranch. He was in the trucking business and knew nothing about cattle or ranching. Plaintiff asked defendant to look at the ranch to see if it could be used for cattle raising. Plaintiff and defendant had been friends for years and at one time had been partners in the trucking business. Defendant was in the dairy business and knew how to buy dairy cows. He had never bought beef cattle.

After looking at the ranch, plaintiff and defendant decided to go into partnership. Plaintiff was to provide the land, clear and level land for farming, provide pumps and sumps or wells, furnish wire and posts for fences, make major repairs on equipment and pay the grazing fees. Defendant was to operate the ranch, provide labor and farm machinery and fuel, put in a levee, and choose and buy cattle. The cost of cattle and fertilizer was to be divided equally between plaintiff and defendant and they were to share equally in the profits. Defendant's cousin, an experienced cattleman, was hired to run the ranch and was to get one-half of defendant's profits as pay.

After going into partnership, defendant called a former owner of the ranch and was told it would support about 250 head of cattle without supplemental feed. He then made arrangements to buy 250 head of cows from a neighbor of his at $145 per head. Defendant told plaintiff the cows weighed 1000 to 1200 pounds when fat and were going to have calves. Actually, the cows were old, weighed 900 to 950 pounds on the average and were mostly cutters and canners grade with a few of commercial grade. They were not worth the price paid for them. At the suggestion of plaintiff, the number of cows was increased to 350 head and the final price was 300 cows at $140 per head and 50 cows at $130 per head. Before the

partnership, defendant had looked at these same cows and had estimated he could buy them for $100 per head. He did not tell this to plaintiff.

The cows were taken to the ranch though nothing had been done to improve it. Soon after, 19 bulls were bought to service the cows after they dropped their calves. These bulls were bought through the same neighbor of defendant for $250 per head. The neighbor bought them for $200 per head turning a quick profit. The defendant had no knowledge of this profit until after the partnership was over. Not all the bulls were of sufficient size to service all the cows.

After the purchase of the cows, defendant's cousin told him that they were too old for the ranch. Defendant did not tell this to plaintiff. After the partnership was ended, the cows started "going down" and almost a hundred died because there was not sufficient feed on the range for old cows to forage.

At the time the partnership was formed, both of the partners knew that defendant had a bad back. After the partnership was formed, defendant was operated on and spent a few weeks in bed. When the defendant could get around, he asked for a conference with plaintiff. Defendant says that he told plaintiff that his back was worse than he had thought and it would be better if he got out of the partnership.

Plaintiff testified that defendant said he needed money for income tax payments and wanted to sell out. In any event, plaintiff agreed to pay defendant $16,000 for his interest in the partnership. Of this amount, $6,000 was evidenced by a note and $2265 was paid by cancelling a debt owed by defendant. The balance was paid in cash. Defendant agreed to continue supervising the ranch and sold plaintiff a piece of machinery for $3,000. Defendant's cousin continued to run the ranch.

Plaintiff has assigned as error the refusal of the trial judge to give three instructions. Two of the instructions read:

"PLAINTIFF'S REQUESTED INSTRUCTION NO. 2

"The elements of actionable fraud are:

"1. A representation *or concealment*.

"2. The falsity of the representation *or the existence of a duty to refrain from concealing*.

"3. Its materiality.

"4. Speakers knowledge of the falsity of the representation or the ignorance of its truth; *or the failure of the speaker to reveal that which he has a duty to reveal*.

"5. His intent that it should be acted upon and in a manner reasonably contemplated.

"6. The hearers ignorance of the falsity of the representation, *or the hearer's ignorance of those matters which are not revealed.*

"7. The hearer's reliance on the truth of the representation, *or the reliance upon the assumption that the speaker has revealed all.*

"8. The right to rely thereon.

"9. His consequent and proximate injury." (Emphasis supplied.)

## "PLAINTIFF'S REQUESTED INSTRUCTION NO. 7

"If Williams knew that the cows and bulls were not suited for the purpose contemplated by the parties and failed to disclose this knowledge to Gibbons, and Williams knew that the disclosure could justifiably induce Gibbons to refuse to purchase the cows and bulls, then Williams is subject to the same liability as Gibbons as though he had stated directly that the cows and bulls were suited for the use upon the Planet Ranch as contemplated."

Plaintiff argues that the refusal to give the underscored parts of requested instruc-tion No. 2 and all of requested instruction No. 7 denied him the right to have the jury consider whether the defendant had perpetrated a fraud by concealing information from the plaintiff which defendant was under a duty to disclose.

We need not decide whether a fraud may be perpetrated by concealment or whether the facts warranted an instruction on fraudulent concealment as the trial judge instructed the jury as follows:

"You are instructed that the plaintiff and the defendant were partners until March 21, 1955, and, therefore, the law imposed on each of them an obligation of the utmost good faith in their dealings with one another in respect to their partnership affairs, and a duty of acting for the common benefit of all partners in all transactions relating to their partnership business and a duty to refrain from taking any advantage of the other by the slightest misrepresentation, *concealment,* or adverse pressure of any kind." (Emphasis supplied.)

■ This instruction when read together with the trial judge's instructions on the nine elements of fraud adequately covered the question of concealment. Where other instructions properly inform the jury as to the issues it is not error to refuse requested instructions covering the same

**120**

subject matter, Johnson v. Orcutt, 92 Ariz. 295, 376 P.2d 557.

■ Plaintiff also complains of the trial judge's refusal to give his requested instruction No. 5 which reads:

"PLAINTIFF'S REQUESTED INSTRUCTION NO. 5

"A fiduciary obligation to disclose all material facts to a partner is greater where the partner is the manager of the business."

Again we need not decide whether this instruction was necessary because we are of the opinion that the above quoted instruction given by the trial judge also adequately covered this point. We do not see how one could have a duty greater than "* * * the obligation of the *utmost* good faith * * *" whether he be a manager or not. We find no error in the refusal to give this instruction, Johnson v. Orcutt, supra.

Affirmed.

UDALL, V. C. J., STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., concurring.

NOTE: Chief Justice BERNSTEIN, having announced his disqualification, the Honorable PORTER MURRY, Judge of Superior Court, Cochise County, was called to sit in his stead.