460 P.2d 646

**Ally O. HING, Appellant,**

v.

**Charles Pacho YOUTSEY as surviving spouse of Matilda F. Youtsey, deceased, Appellee.**

**No. 2 CA–CIV 522.**

Court of Appeals of Arizona. Division 2.

Oct. 23, 1969.

Rehearing Denied Nov. 19, 1969.

Review Denied Jan. 20, 1970.

Herbert Mallamo, Phoenix, for appellant.

Miller, Pitt & Feldman, by Richard Mc-. Anally, Tucson, for appellee.

HATHAWAY, Judge.

This appeal arises out of a lawsuit initiated by Charles Pacho Youtsey for the wrongful death of his wife, Matilda A. Youtsey. The suit was brought against Ally O. Hing, Richard Carroll Matthews and Laverne T. Oldham. Process was not served on Richard Carroll Matthews, and only Hing defended.

The jury rendered a verdict in favor of the plaintiff Youtsey and against the defendant Hing for $25,000. The jury failed to return a verdict against Oldham. The defendant Hing has appealed from the judgment entered on the verdict against him.

On September 27, 1965, Hing employed Oldham, Mr. Matthews, Mr. Salas, and Mr. Taylor in a house moving operation. Oldham was in charge of this group. The movement of the house over the highways from the old townsite of Ray to an area north of that town was made in a convoy of three trucks. Taylor drove the lead truck followed by Oldham driving the truck moving the house, and bringing up the rear was a truck driven by Matthews accompanied by Salas. In the late afternoon this caravan proceeded in a northwesterly direction on State Route 17 through a mountainous region in Pinal County. On an upgrade about 700 feet west of the Ray junction on State Route

177, Oldham noticed his truck was over-heating. He continued for several hundred feet and then parked his vehicle at the right edge of the highway. The following truck driven by Matthews stopped directly behind the Oldham vehicle, in the west bound lane of traffic. Matthews walked directly to the disabled truck, and shortly thereafter the plaintiff's vehicle crashed into the rear of the truck Matthews had been driving.

The plaintiff and his deceased wife had been traveling in the same direction as the defendants. At the trial the plaintiff testified that as he drove around the curve at the Ray junction he was blinded by the afternoon sun. Unable to look out the windshield because the sun was too bright, he continued driving at a speed from 25 to 45 miles per hour while looking out the side driver's window and observing the yellow line on the highway. The plaintiff then struck the rear of the vehicle that had been driven by Matthews. There were no warning devices or flagmen to warn on-coming traffic of the vehicles parked on the highway.

The defendant contends that it was error for the trial court to deny his motion for a directed verdict and his motion for a judgment notwithstanding the verdict. In considering this contention we must view the evidence most strongly in favor of sustaining the verdict of the jury. Glowacki v. A. J. Bayless Markets, 76 Ariz. 295, 263 P.2d 799 (1953). The contention is made that all evidence points to plaintiff's negligence as the proximate cause of the accident.

It appears from the record that the evidence concerning the negligence issue is conflicting. True the plaintiff, while blinded by the sun, continued driving at a speed from 25 to 45 miles per hour by looking at the yellow line dividing the highway. However, because of the condition of the road shoulders the only safe place to stop without blocking the highway was approximately where the defendant's vehicles were located. The defendant had not placed appropriate warning signals at the rear of the disabled vehicle, in violation of A.R.S. § 28–961, subsec. D, and the vehicle was partially blocking the west bound lane. Furthermore, they had not removed the undisabled vehicle driven by Matthews from the highway, in violation of A.R.S. § 28–871, subsec. A as amended, even though there was sufficient room to park on the 50-foot shoulder available at that location.

Counsel for plaintiff conceded in argument that even if the flags had been placed "it's fairly clear with the vision problem * * * it wouldn't have warned Mr. Youtsey." He points out, however, that defendants should have known of this vision problem and should have therefore taken additional steps to caution approaching traffic. The appellants contend that they had insufficient time to place flagmen at the rear of the disabled vehicle to warn on-coming traffic. That was a factual question for the jury's consideration. Finding the evidence conflicting on the proximate cause issue, we must sustain the trial court's denial of the defendant's motion for a directed verdict and motion for a judgment notwithstanding the verdict. Casey v. Beaudry Motor Company, 83 Ariz. 6, 315 P.2d 662 (1957); Federal Practice & Procedure, Barron & Holtzoff, Vol. 2B, § 1075, pp. 375–404.

The defendant next contends that the jury's failure to return a verdict against the employee Oldham is res judicata on the issue of negligence of the employer Hing and he should therefore be exonerated. However, liability of the "master" Hing was predicated not only on the negligence of Oldham, but also on that of Matthews and Salas. Although it appears that the jury found that Oldham was not the proximate cause of the accident, they could have concluded that the conduct of Matthews in parking his vehicle on the highway, and the failure of Matthews and Salas together to place warning flags or act as flagmen was a proximate cause of the accident.

The Arizona Supreme Court dealing with a situation very similar to this in DeGraff v. Smith, 62 Ariz. 261, 157 P.2d 342 (1945) quotes with approval from Inter State Motor Freight System v. Henry, 111 Ind. App. 179, 38 N.E.2d 909 (1942), where the court said:

"Where a master and servant are joined as parties defendant in an action for injuries inflicted by the servant, a verdict which exonerates the servant from liability from injuries caused solely by the alleged negligence of the servant requires also the exoneration of the master. * *

"But a verdict in favor of one servant does not bar a recovery against the master, where the evidence shows that the negligence of another servant who is not joined as a party, or who if joined as a party is not exonerated by the verdict, has caused the injury. * * *" 38 N.E.2d at 912.

Where reasonable men might draw different inferences from the evidence, the reviewing court must accept the inferences drawn by the jury. Only when reasonable men must draw the same conclusion from the evidence does the court resolve the question. Bullard v. Stonebraker, 101 Ariz. 584, 422 P.2d 700 (1967). The jury's finding of negligence against the employer Hing is supported in the evidence.

Before the commencement of the trial, the court granted plaintiff's motion *in limine* to preclude defendant from introducing evidence of plaintiff's remarriage. The defendant contends that the granting of this motion was error in that a statement by the plaintiff that he was "upset, worried" over the death of his wife, aroused the sympathy of the jury causing it to re-turn an excessive verdict for the plaintiff. In 87 A.L.R.2d 252, p. 255 it is stated:

"The majority of American jurisdictions. which have considered the question hold the remarriage of a surviving spouse, or the possibility thereof, does not affect the damages recoverable for wrongful death of the deceased spouse."

This court followed that majority rule in City of Phoenix v. Whiting, 10 Ariz. App. 189, 457 P.2d 729 (1969), where the trial judge was affirmed in precluding reference to the remarriage of a plaintiff. One member of the Appeals Court urged the minority view to the contra. We hearken to this precedent and conclude likewise that the issue of remarriage was properly excluded.[1] The inquiry in this action addressed to "the injury resulting from the death",[2] based upon reasonable expectations had the decedent lived. Comparisons of a plaintiff's subsequent marriage and the merits and disadvantages between the decedent and the new spouse are fraught with mischief. Should the subsequent conjugal venture prove happier and more beneficial, it is unthinkable that the defendant should be rewarded.

Other cases expressing this view are Benwell v. Dean, 249 Cal.App.2d 345, 57 Cal.Rptr. 394 (1967); Bunda v. Hardwick,. 376 Mich. 640, 138 N.W.2d 305 (1965); Curnow v. West View Park Co., 220 F. Supp. 367 (D.C.Pa.1963) and J. A. Robinson Sons, Inc. v. Ellis, Tex.Civ.App., 412 S.W.2d 728 (1967). And see, Boies v. Cole, 99 Ariz. 198, 407 P.2d 917 (1965).

The defendant also alleges that the court's order *in limine* denied him the right to effectively cross-examine and impeach the plaintiff. When the plaintiff testified to being upset he was referring to his inability

---

1. Our Supreme Court declined to consider the question in State v. Stone, 104 Ariz. 339, 452 P.2d 513 (1969), and supplemental opinion 452 P.2d 513.

2. A.R.S. § 12–613 states in part:
   "In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default."

to recall at the time of his deposition a conversation he had with another witness. The testimony was as follows:

"Q You deny, Mr. Youtsey, that I asked you about what Mr. Gonzales has said to you on this deposition?

A To tell you the truth I was all upset. I don't remember what I said to you. That is all I know.

Q Mr. Gonzales * * * I mean Mr. Youtsey, you are not upset over the death of your wife on January 20, 1967?

A I was still worried about it.

Q You were still worrying about it?

A Yes.

Q And this affected your ability to testify?

A Yes."

We believe that this is a clearly collateral issue and not directed to the issue of damages. As a collateral matter it is not an area which is the basis for impeaching questions. Impeachment of a witness must be confined to material points and cannot be directed to collateral matters.

The defendant next contends that it was error for plaintiff's counsel in his final argument to use a "per diem" approach of damages, which he alleges resulted in an excessive verdict being rendered for the plaintiff. Counsel for the plaintiff argued to the jury that they could award plaintiff the sum of $3 per day or $1000 per year. These remarks were later tempered by plaintiff's counsel in asking for any amount of damages the jury would deem just and reasonable. The defendant cites the case of Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331 (1958), for the proposition that the use of an arithmetical per diem formula argument constituted prejudicial and reversible error.

The *Botta* case is distinguishable from Arizona practice, however, since it was decided under a New Jersey case that the damage clause of the complaint is not to be referred to, while under our Rule 39(b), as amended, of Arizona Rules of Civil Pro-

cedure, 16 A.R.S., the plaintiff has the right to read his entire complaint. The *Botta* rule has also, it appears, been rejected by the majority of jurisdictions. In Wyant v. Dunn, 140 Mont. 181, 368 P.2d 917 (1962), the court refused to abide the *Botta* rule saying "[T]he preferable rule in this state, in view of our statute and the custom and practice thereunder, is to leave the propriety of counsel's use of such argument to the sound discretion of the trial court." We agree that the better rule is that such a matter is properly left to the sound discretion of the trial court, O'Rielly Motor Comany v. Rich, 3 Ariz. App. 21, 411 P.2d 194 (1966), and we find no abuse of discretion here.

We also find that the damages are not flagrantly outrageous and extravagant nor has it been shown that the jury acted by passion, partiality, prejudice or corruption. As this court stated in Garcia v. City of Tucson, 1 Ariz.App. 83, 399 P.2d 704 (1965):

"The adequacy of a jury's award is a matter peculiarly within the discretion of the trial court, and will not be disturbed on appeal unless it appears that the amount is without support in the evidence." 1 Ariz.App. at 84, 399 P.2d at 705.

The defendant further contends that the refusal to give several instructions was error. He contends that it was error not to give defendant's instruction No. 15 on grounds that there was evidence of impaired vision by the plaintiff. Number 15 in effect instructs that if the plaintiff was affected adversely by his physical disabilities he was bound to use a greater degree of care and safety. Although the plaintiff is required to wear glasses, the record shows that he could see perfectly with the use of corrective lenses, which he was wearing at the time of the accident. On review of the record we find there is no substantial evidence that the plaintiff had any vision disability at the time of the accident and we find no error in the refusal to give the instruction. Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325 (1947).

The defendant next says error occurred in not giving defendant's instruction No. 17. This was identical in all respects with plaintiff's instruction No. 5, which was given. The defendant, however, also says the giving of plaintiff's instruction No. 5 was error. We fail to understand how on one hand the defendant can claim as error the denial of an instruction then claim error when the identical instruction was given. No error has been committed here. Tucson Utility Supplies, Inc. v. Gallagher, 102 Ariz. 499, 433 P.2d 629 (1967); Aguilar v. Carpenter, 1 Ariz.App. 36, 399 P.2d 124 (1965); Gibbons v. Williams, 93 Ariz. 116, 378 P.2d 926 (1963) and Johnson v. Orcutt, 92 Ariz. 295, 376 P.2d 557 (1962).

Defendant's instruction No. 15, on the "look is to see" doctrine, was not given. However, as this merely restates an instruction previously given it was adequately covered. Instructions must be considered as a whole, and not piecemeal. Arizona Eastern Railroad Co. v. Cox, 27 Ariz. 469, 233 P. 1102 (1925). We also find that the giving of instruction No. 18, in modified form, also on the same doctrine, was not error. The given portion thoroughly covered the "look is to see" doctrine, and the deleted portion would have mandated an inference that the plaintiff was negligent. Here the evidence showed a disputed fact situation as to whether the plaintiff observed the position of the defendant's trucks, thus this case does not come within Mantovani v. Green, 90 Ariz. 376, 368 P.2d 448 (1962). In Kelch v. Courson, 7 Ariz.App. 365, 439 P.2d 528, 529 (1968), this court stated:

> "We believe the 'look is to see' doctrine is one permitting an inference, not one mandating it. We hold that the instruction was properly refused." 7 Ariz.App. at 369, 439 P.2d at 532.

Defendant also requested that an instruction on the "range of vision" rule be given. That was correctly denied, in view of LeRoy v. Phillips, 97 Ariz. 263, 399 P.2d 669 (1965) and Newman v. Piazza, 6 Ariz.App. 396, 433 P.2d 47 (1967) holding the "range of vision" rule inapplicable in Arizona.

Defendant says it was error not to give his instruction that the jury should consider the physical facts involved and if such facts are contra, the testimony of witnesses should be disregarded. We find, however, that this subject was covered in the court's basic instruction to the jury, and thus it was not error to refuse to give a repetitious instruction. Aguilar v. Carpenter, supra.

Finally the defendant objects to giving plaintiff's instructions 8 and 10 which, in quoting the wrongful death statutes, said that Matilda Youtsey's beneficiaries are entitled to recover damages. The objection centers on the argument that all evidence shows her death was proximately caused by the negligence of Charles P. Youtsey. In effect, the defendant is raising the same argument raised on his motion for a directed verdict. We believe that the evidence was conflicting on the negligence issue, and find no prejudicial error was committed during these instructions.

Affirmed.

KRUCKER, C. J., and HOWARD, J., concur.