462 P.2d 804

Joseph LaFRENTZ, by his Guardian ad Litem, Robert LaFrentz, Appellant,

v.

Frank GALLAGHER, Gerald Zehr, Washington School District #6, Donald Ott, Thomas Graves, A. W. Prenovost, Jr., Leonard Corburn, and C. Fred Hoenes, Jr., Appellees.

No. 9679.

Supreme Court of Arizona.

In Division.

Dec. 16, 1969.

Rehearing Denied Jan. 13, 1970.

Hughes, Hughes & Conlan, by John C. Hughes, Phoenix, for appellant.

Ivan Robinette, Phoenix, for appellees Frank Gallagher & Gerald Zehr.

Snell & Wilmer, by Gary H. Fry, Phoenix, for appellees Washington School District #6, Donald Ott, Thomas Graves, A. W. Prenovost, Jr., Leonard Corburn, and C. Fred Hoenes, Jr.

McFARLAND, Justice.

Joseph LaFrentz, by his Guardian ad Litem, Robert LaFrentz, hereinafter referred to as plaintiff, sued Frank Gallagher, Gerald Zehr, Washington School District #6, Donald Ott, Thomas Graves, A. W. Prenovost, Jr., Leonard Corburn, and C. Fred Hoenes, Jr., the latter individuals being members of the School Board, for assault and battery alleged to have been committed by defendant Gallagher on February 25, 1964. The court dismissed the case as to the individual members of the School Board prior to any testimony being given, and also granted a motion to dismiss as to defendant Gerald Zehr, the principal of the school.

The case was tried by the court with a jury as to defendants Frank Gallagher and the School District, resulting in a verdict in favor of defendants.

Plaintiff at the time of the trial was twelve years old and in the seventh grade

in the Desert View School, which is one of the schools in the Washington School District #6. Plaintiff was about five feet tall, and weighed approximately eighty pounds. He was attending a physical-education class at the time of the incident. Frank Gallagher, a teacher in the school, was coach in charge of the class. The students were playing softball, and Gallagher was umpiring the game.

According to the testimony of the plaintiff, he was at bat and had hit a ground ball, and the call at first base was close, but Gallagher called him out. He stated that while he was walking back, "kicking the dust," Gallagher came up to him, grabbed him by the throat and slammed him into the backstop, with the words:

"I don't want any more of your Little League lip, punk!"

This testimony was corroborated at least in part by a fellow student, Tom Raudebaugh, who stated:

"Mr. GALLAGHER came up and said he was sick and tired of his Little League lip and grabbed him by the neck and pushed him up against the backstop."

Plaintiff claimed both actual and exemplary damages. There was a definite conflict in the evidence as to the conduct of Gallagher. His testimony was to the effect that plaintiff was at bat, and had hit the ball on the ground—that a fielder picked it up and threw it to first base, and he [Gallagher] had called him out. The plaintiff then stated: " 'What,' or something like that. And I said: 'You are out.' He says: 'The hell I am.' "

Gallagher then testified that as he [Gallagher] came from the thirdbase line toward the backstop he pushed plaintiff on the chest region, the pectoral region, and told him that was not the type of language to use on the athletic field. Gallagher testified that he did not grab plaintiff by the throat, that he did not choke him, nor intend to strike the backstop. He stated:

"A. I felt that I had to get his attention and the rest of the boys' attention. Just sending him off the field, some may

not have known what he was sent off for * * *

* * * * * *

"So, at this particular situation, he was close to the backstop, and I walked up and pushed him and told him that I didn't think those were the correct words to use and I really felt this way, that is no—you let somebody say 'Hell' or 'damn' and pretty soon you have got thirty-five boys out there swearing, and it gets worse than that, and you are not doing your job as a teacher.

"And then after this, after I pushed him, his side was out, and he continued on playing until the end of the period."

Gallagher's testimony was corroborated at least in part by Pat Morrison, girls' physical education teacher, who testified, when asked what she saw or observed:

"A. There was a dispute, about which I don't know, it was about 40 feet back. But Coach Gallagher said to me, 'Excuse me,' and he went to the center of the diamond and grabbed a boy closest to him. And I remember the LaFrentz boy was very close to the Coach, and he was yelling.

"Q. Then what happened?

"A. The Coach took his hand and shoved the boy.

"Q. What happened to the boy?

"A. The boy landed in a chickenwire backstop, which we used on the softball diamond.

"Q. Chicken-wire?

"A. Chicken-wire.

"Q. Not chain link?

"A. Not chain link, chicken wire.

"Q. Did the boy fall to his knees, or what happened to him?

"A. No, the boy landed against the chicken-wire. He stood there, he didn't fall."

Plaintiff contends that the court erred in not permitting evidence of prior similar acts against other students. The

trial court properly held that the prior acts were not admissible for the purpose of proving commission of the acts—that is, assault and battery. Indeed, plaintiff admits the correctness of this ruling in his reply brief at page one where he stated:

"The brief of the defendants, Gallagher and Zehr opens upon a premise that similar acts are not admissable to prove the act in issue. We have not argued nor do we now argue that the rejected evidence was admissable for such purpose."

On the question of knowledge, the case had been dismissed as to the school principal, Gerald Zehr, for failure to state a claim against him. The court had also dismissed the case as against the individual members of the school board.

Plaintiff does not in his brief mention or discuss the question of whether the court erred in dismissing the action as to the defendant Zehr, or as to the defendants, the individual members of the school board; however, plaintiff does contend that the prior acts were admissible on the ground of knowledge, intent, and malice, and for the purpose of showing the right to punitive damages. It is clear that evidence of other acts would not be admissible for the purpose of showing knowledge, nor would they be admissible for the purpose of showing the liability of the school board, as knowledge is not required to make the school district responsible for such a tort liability. Ewald v. Pielet Scrap Iron and Metal Co., 310 Ill.App. 218, 33 N.E.2d 930. See also Lewis v. Southern Pacific Co., 102 Ariz. 108, 425 P.2d 840.

It is a well-established principle of law in an action against a school teacher for damages for battery that corporal punishment which is reasonable in degree administered by a teacher to a pupil as a disciplinary measure is "privileged," and does not give rise to a cause of action for damages against the teacher. The courts have held that the teacher is in loco parentis, so that the crucial question that arises is the reasonableness of the punishment. · Restatement of the Law, 2d, Torts, Sec.

147(2), 150. There was a conflict in the evidence as to the degree of punishment. This question of reasonableness was submitted to the jury under proper instruction. The jury accepted Gallagher's version.

Plaintiff in his brief presents three grounds which he contends evidence of prior similar acts is admissible in an action for assault and battery. Gallagher admitted pushing plaintiff, so the question is whether the pushing was a reasonable exercise of a disciplinary measure which is "privileged." Prior acts upon third parties, at other times and under different circumstances, would not show or lend any light upon the question as to whether this particular act of Gallagher's was performed for the purpose of discipline, and would not have any probative value to show malice toward this plaintiff. One of the reasons for the general rule of excluding other acts is that they would require a trial upon collateral matters. It would require a departure from the general theory of confining proof to matters directly at issue between the parties. Such a procedure is always subject to criticism. It is not only the inconvenience of trying collateral issues, but it may occasion surprise to the adverse party, and may mislead the jury to such an extent that it detracts from the principal issue and thereby unduly prejudice the rights of the defendant. See Kurn v. Radencic, 193 Okl. 126, 141 P.2d 580. In discussing the admission of evidence of similar transactions to show intent, the Colorado Supreme Court, in People ex rel. Kent v. Denious, 118 Colo. 342, 196 P.2d 257, stated:

"* * * Evidence as to these other alleged transactions was tendered to show intent only. The admission of evidence of similar transactions on the issue of fraudulent intent, is based on the inference of such intent in the transaction at issue because of like intent being shown in other similar transactions. Such inference is far from conclusive, and this character of testimony, it has been held, should be admitted by the court with

caution. McKay v. Russell, 3 Wash. 378, 28 P. 908, 28 Am.St.Rep. 44. As is well stated in 32 C.J.S. Evidence § 578, page 433, 'The courts have realized that the admission of such evidence involves the practical inconvenience of trying collateral issues and protracting the trial, and that it may occasion surprise or other prejudice to litigants, and that it may bewilder and mislead a jury. * * * the admission of evidence of similar acts * * * rests largely in the discretion of the trial court.' Here the charge at issue is, that respondent's conveyance to himself of his client's land was made with intent to defraud. The tendered evidence which concerned similar transactions consisted of a statement that on two other occasions property belonging to petitioner or to a Tivoli company had been deeded to a corporation belonging to respondent. There is no suggestion that respondent admitted fraudulent intent in these other transactions or that there was any stronger proof there than here, that petitioner did not know of, or consent to, such conveyances. Accordingly, if admitted in evidence, the 'similar transactions' would have involved the same witnesses, the same evidence, the same question as to credibility between petitioner and respondent and the same ultimate doubt as is involved in the transaction here at issue. It would no more tend to prove petitioner's contention, than that of respondent. Evidence of similar transactions should not be admitted unless clear and convincing. 'Evidence of a vague and uncertain character offered for the purpose of proving that the defendants had been guilty of similar offenses should never be admitted under any pretense whatever.' Baxter v. State, 91 Ohio St. 167, 110 N.E. 456, 458."

Plaintiff next contends that the other acts were admissible under the issue of exemplary damages. In order to recover exemplary damages the jury would have first to find actual damages; there-

fore, since the jury found in favor of defendant for actual damages plaintiff was not prejudiced by exclusion of this evidence. Gomez v. Dykes, 89 Ariz. 171, 359 P.2d 760, 82 A.L.R.2d 1093.

Plaintiff also contends that the court erred in its instructions to the jury. First, the court erred in refusing to give his requested instructions Nos. 1 and 2, which defined assault and battery. Under the facts in the instant case, if Gallagher's acts were unreasonable then they amounted to battery. Battery was defined by the court in its instructions.

The next instructions complained of were instructions Nos. 3 and 4, defining the duty and care required in the supervision of children by school officials. This was covered by the instruction of the court which included an instruction describing the relationship of teacher and pupil as loco parentis. Plaintiff next refers to instructions Nos. 5 and 8. No. 5 defines a servant, and states that a servant "is subject to the other's control or right to control." No. 8 relates to instructions in regard to the school principal, defendant Zehr, and the individual members of the School Board. Neither No. 5, relating to the acts of servant, nor No. 8, relating to the personal liability of the individual members of the School Board, were applicable, since charges against both the principal Zehr and the individual members of the School Board were dismissed. The instructions given by the court were full and complete, and covered all the material issues necessary for a determination as to whether defendant Frank Gallagher's act was reasonable in the circumstances. We have held that it is not error for the court to refuse requested instructions where the contents are substantially covered otherwise. Gibbons v. Williams, 93 Ariz. 116, 378 P.2d 926; and Johnson v. Orcutt, 92 Ariz. 295, 376 P.2d 557.

Judgment affirmed.

UDALL, C. J., and STRUCKMEYER, J., concur.