Donna J. KIMERY et al., Petitioners,

v.

PUBLIC SERVICE COMPANY OF OKLAHOMA, Respondent.

No. 50275.

Supreme Court of Oklahoma.

April 5, 1977.

Don L. Dees, Glenn P. Bernstein, Tulsa, for petitioners.

R. Dobie Langenkamp, William H. Hinkle, Doerner, Stuart, Saunders, Daniel & Langenkamp, Robert L. Lawrence, Tulsa, Robert W. Blackstock, Blackstock & McMillan, Bristow, for respondent.

BARNES, Justice.

This is an appeal from an interlocutory order of the District Court of Tulsa County, Oklahoma. The question now before this Court evolved out of Petitioners' wrongful death cause of action against Respondent, Public Service Company of Oklahoma. The Trial Court certified the following question, that has not been previously considered by this Court, for determination:

"In an action for wrongful death brought by a surviving spouse under 12 O.S. 1971, § 1054, is defendant entitled to inform the jury, at any stage of the trial, of the plaintiff's subsequent remarriage or the possibility of the plaintiff's remarriage?"

In preparation for a jury trial Petitioners filed a Motion in Limine for the purpose of excluding the fact of Donna Kimery's remarriage from the jury's knowledge.

The Motion in Limine came on for hearing October 26, 1976, and the Trial Court ordered that Respondent would be allowed to inform the jury of the remarriage and question Donna Kimery with regard thereto. Petitioners timely requested that the question involved be certified for immediate appeal, and said motion was sustained.

From our review, a majority of jurisdictions that have addressed this issue supports Petitioners' position that evidence of a surviving spouse's remarriage, or the possibility thereof, is inadmissible in an action for wrongful death brought by the surviving spouse. See 87 A.L.R.2d 252. A reason often stated for this rule is the highly speculative nature of such evidence as proof in mitigation of damages. *Cherrigan v. City and County of San Francisco,* 262 Cal.

App.2d 643, 69 Cal.Rptr. 42 (1962); *Benwell v. Dean,* 249 Cal.App.2d 345, 57 Cal.Rptr. 394 (1967); and *Hing v. Youtsey,* 10 Ariz. App. 540, 460 P.2d 646 (1969).

In *Stuart v. Consolidated Foods Corporation,* 6 Wash.App. 841, 496 P.2d 527 (1972), the Court held evidence of remarriage or prospective remarriage of the surviving spouse in a wrongful death action should be excluded, stating:

"* * * The exclusion of such evidence leaves to the understanding and experience of the jury the possibility of remarriage and avoids excursions into collateral investigations which, even if allowed, would leave a jury in no better than a speculative position."

The Washington Court quoted from the *City of Rome,* 48 F.2d 333 (S.D.N.Y.1930), which disallowed such evidence and held:

" 'If we should enter upon an inquiry as to the relative merits of the new husband as a provider, coupled with his age, employment, condition of health, and other incidental elements concerning him, unavoidably we should embark upon a realm of speculation and be led into a sea of impossible calculations. Moreover, adherence to the rule followed by the commissioner seems essential to consistency with the holding that, upon the death of the first husband, there was "an immediate, final and absolute vesting" in his widow, as the statutory beneficiary, of a cause of action on that account.' (citations omitted)."

In *Hing, supra,* the Trial Court granted the plaintiff's motion in limine before the commencement of the trial to preclude the defendant from introducing evidence of plaintiff's remarriage. The Appeals Court concluded likewise that the issue of remarriage was properly excluded, stating that comparisons of a plaintiff's subsequent marriage and the merits and disadvantages between the decedent and the new spouse are fraught with mischief.

The South Carolina Supreme Court in *Smith v. Wells,* 258 S.C. 316, 188 S.E.2d 470 (1972), stated:

"The assessment of the intangible elements of damages which will of reasonable necessity result in the future to the beneficiaries is, at best, most difficult. The highly speculative inquiry into the prospective value of the second marriage would not contribute to the certainty of the ultimate determination of the damages, and could only serve to inject considerations which would confuse the issues."

Secondly, a number of courts apply the collateral source rationale to exclude evidence of a surviving spouse's remarriage from the jury's consideration. See *Seaboard Coast Line Ry. Co. v. Hill,* 270 So.2d 359 (Fla.1973), and *Bunda v. Hardwick,* 376 Mich. 640, 138 N.W.2d 305 (1965). In the latter case the Michigan Court overruled five prior cases which had allowed evidence of remarriage to mitigate damages and held that such evidence was irrelevant and should be excluded. The Court said it felt the help that the jury might receive from such evidence was outweighed by the possible resultant harm and involved a collateral source which was not a proper jury concern.

The collateral source rule has been adopted in Oklahoma where the defendant wished to introduce evidence of the plaintiff's receipt of sick benefits from her employer during the time she was disabled as a result of injuries sustained in a bus accident. See *Denco Bus Lines v. Hargis,* 204 Okl. 339, 229 P.2d 560 (1951). The Court therein found the sick benefits received from plaintiff's employer were a collateral source, and said in the second syllabus:

"2. Upon commission of a tort it is the duty of the wrongdoer to answer for the damages wrought by his wrongful act, and that is measured by the whole loss so caused and the receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person causing the injury."

We think the same rationale can be applied to exclude evidence of a surviving spouse's remarriage from the jury's consideration.

A third reason for the exclusion is the fact that the cause of action for wrongful death arises at the time of the decedent's death and damages are fixed and determinable as of that exact date. *City of Rome, supra; Wiesel v. Cicerone,* 106 R.I. 595, 261 A.2d 889 (1970); *Phelps v. Magnavox Co.,* 497 S.W.2d 898 (Tenn.App.1972); and *Seaboard Coast Line Ry. Co. v. Hill, supra.* These cases point out that the fundamental question is not the surviving spouse's financial situation after the spouse's death, but what the survivor might reasonably have expected to receive from the spouse had he lived. Otherwise, the situation could arise where the widow who remarried the day after the trial would receive an unjust advantage over the widow who remarried the day before trial.

Due to the overwhelming weight of authority and on grounds of public policy, we think the question certified must be answered in the negative. We hold that evidence of a surviving spouse's remarriage, or the possibility thereof, is irrelevant and inadmissible at any stage of the trial in a wrongful death action.

The lower court's order of October 26, 1976, is vacated, and the Trial Court is directed to enter an order granting Petitioners' Motion in Limine.

CERTIORARI GRANTED; TRIAL COURT'S ORDER VACATED; CAUSE REMANDED WITH DIRECTIONS.

All the Justices concur.