909 P.2d 486

**Charie WALLACE, a married woman, Plaintiff/Appellant,**

v.

**CASA GRANDE UNION HIGH SCHOOL DISTRICT NO. 82 BOARD OF GOVERNORS; Ted J. Adams and Donna Adams, husband and wife, Defendants/Appellees.**

**No. 2 CA–CV 94–0264.**

Court of Appeals of Arizona, Division 2, Department A.

Oct. 31, 1995.

Reconsideration Denied Nov. 17, 1995.

*OPINION*

PELANDER, *Judge.*

## PROCEDURAL HISTORY

Plaintiff/appellant Charie Wallace, a school administrator/teacher, sued her employer, Casa Grande Union High School District No. 82 Board of Governors (the District) and its superintendent, Ted Adams, alleging the following claims: (1) defamation; (2) failure to pay salary in violation of A.R.S. § 15–544; (3) wrongful denial of continuing status (or tenure); (4) intentional interference with contractual relations; (5) intentional infliction of emotional distress and (6) violation of 42 U.S.C. § 1983, based on alleged violations of plaintiff's equal protection and due process rights. Plaintiff sought compensatory and punitive damages, as well as treble damages under A.R.S. § 23–355 for the failure to pay salary claim.

The trial court granted defendants' motions to dismiss the punitive damages, treble damages and § 1983 claims, which were filed under Ariz.R.Civ.P. 12(b)(6), 16 A.R.S. The court later granted defendants' motions for summary judgment on all remaining claims, and this appeal followed. For the reasons stated below, we affirm.

## BACKGROUND FACTS

Plaintiff was hired by the District in 1984. After working one year as a classroom teacher, she was promoted to an administrative position. From 1985 to 1991, plaintiff worked under six successive, one-year administrator's contracts. The District hired Adams as superintendent in 1989; he was plaintiff's immediate supervisor from 1989 to 1991. Administrative conflicts and personal animosity between Adams and plaintiff arose in 1989 and subsequently intensified.

On April 27, 1990, at Adams' direction and against plaintiff's wishes, she was removed from her administrative position and assigned to full-time classroom teaching. During the 1990–91 school year, plaintiff worked under the same type of contract given to all District administrators and had no change in pay, but she was reassigned to the classroom.

David F. Gomez, P.C. by David F. Gomez and Michael J. Petitti, Jr., Phoenix, for Plaintiff/Appellant.

Teilborg, Sanders & Parks, P.C. by Alison Lewis and Melinda K. Cekander, Phoenix, for Defendants/Appellees.

Although Adams considered terminating plaintiff after the 1990–91 school year, he instead recommended to the District Board in March 1991 that plaintiff's administrative contract not be renewed and that plaintiff instead be offered a teaching contract. The District adopted Adams' recommendation and on May 15, 1991, offered plaintiff a probationary teaching contract for the 1991–92 school year at a substantially lower salary than her 1990–91 administrator's compensation. Plaintiff accepted the teaching contract with a reservation of rights and filed this action in February 1992.

In June 1993, Adams resigned from his position as superintendent. Plaintiff rejected the District's offer to reinstate her to her administrative position on condition that she dismiss her lawsuit. In July 1993, after completing the application and interview process, plaintiff was hired unconditionally by the District for an administrative position.

## STANDARD OF REVIEW

■ On appeal from a summary judgment, we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *United Bank v. Allyn,* 167 Ariz. 191, 805 P.2d 1012 (App.1990). We review *de novo* issues of statutory interpretation because they are issues of law. *Hampton v. Glendale Union High Sch. Dist.,* 172 Ariz. 431, 433, 837 P.2d 1166, 1168 (App.1992). We view the evidence in a light most favorable to the party against whom summary judgment was entered, and all favorable inferences fairly arising from the evidence must be given to that party. *Angus Medical Co. v. Digital Equip. Corp.,* 173 Ariz. 159, 840 P.2d 1024 (App.1992). We will affirm if the trial court's disposition is correct for any reason. *Glaze v. Marcus,* 151 Ariz. 538, 540, 729 P.2d 342, 344 (App.1986).

■ In reviewing the trial court's dismissal of various claims under Rule 12(b)(6), we accept as true the allegations in plaintiff's complaint. *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984). With respect to those claims, we accord plaintiff "the benefit of all inferences which the complaint can

reasonably support" and uphold the dismissal only if it is certain that plaintiff "can prove no set of facts which will entitle [her] to relief upon [her] stated claims." *Gatecliff v. Great Republic Life Ins. Co.,* 154 Ariz. 502, 508, 744 P.2d 29, 35 (App.1987).

## DISCUSSION

### A. *Defamation Claim*

In her July 1992 deposition, plaintiff testified that an assistant principal, James Cooper, came to her shortly after a February 1991 administrative staff meeting, either that same day or a few days later, and told her that Adams had said that plaintiff had had an affair with his predecessor and he had asked Cooper if he knew about it. Plaintiff claims that Adams defamed her by stating that she had been sexually intimate with the previous superintendent. Plaintiff never heard Adams make any such statement. Her defamation claim was based solely on what Cooper had told her Adams had said in the meeting and on a statement Cooper made to a District board member after his deposition was taken. Cooper told the board member Adams had asked him if there was any truth to the rumor that plaintiff and his predecessor had had an affair. In granting summary judgment for defendants on the defamation claim, the trial court found that no admissible credible evidence had been presented to support the claim.

■ Plaintiff contends that her claim is supported by admissible evidence for several reasons. First, she claims that Cooper's statements to her and the board member are admissible as admissions by a party-opponent under Ariz.R.Evid. 801(d)(2)(D), 17A A.R.S. Adams' comment to Cooper about the rumored affair is not hearsay because it was not offered to prove the truth of the matter asserted (*i.e.,* that plaintiff and the former superintendent had had an affair), but rather to prove that Adams made a defamatory statement. Ariz.R.Evid. 801(c). *See* Morris K. Udall et al., *Arizona Practice: Law of Evidence* § 122 at 237–38 (3d ed. 1991). Even if it were so offered, it also is a

party-opponent's own statement and, thus, not hearsay. Ariz.R.Evid. 801(d)(2)(A).

In contrast, Cooper's statements to plaintiff (in February 1991) and the board member (after Cooper's 1992 deposition) were offered to prove the truth of the matter asserted: that Cooper heard and accurately reported Adams' defamatory statement. We find no merit to plaintiff's assertion that Cooper's statements to her and the board member are admissions by the agent of a party-opponent under Ariz.R.Evid. 801(d)(2)(D) and therefore not hearsay. There was no evidence that Cooper was authorized or acting as Adams' agent in finding plaintiff to tell her what Adams had said. *See* Ariz.R.Evid. 801(d)(2)(C); *Boren v. Sable,* 887 F.2d 1032 (10th Cir.1989).

Similarly, plaintiff offered no evidence to show that Cooper's statement to her concerned a matter within the scope of his employment as required by Rule 801(d)(2)(D). Cooper informed plaintiff what Adams had said simply because Cooper "felt it would be appropriate to let her know." Any conversation at the February 1991 meeting about the rumored affair, and Cooper's later informing others of that, were not in furtherance of District business. Thus, Cooper's statements to plaintiff and the board member were not admissible under Ariz.R.Evid. 801(d)(2)(D). *Cf. Shuck v. Texaco Ref. & Mktg.,* 178 Ariz. 295, 298, 872 P.2d 1247, 1250 (App.1994) ("[T]he focus of Rule 801(d)(2)(D) is the content of the statement and whether it relates to some aspect of the employer's business within the scope of the employee's activities.").

Plaintiff next contends that Cooper's statement to her is admissible as a prior inconsistent statement under Ariz.R.Evid. 801(d)(1)(A). We disagree. In the cases on which plaintiff relies, the witness' testimony was directly contrary to the prior inconsistent statement.[1] That is not the case here.

In his deposition, Cooper testified that he recalled a brief discussion in the February 1991 meeting about the rumored affair, but could not remember who had said what to whom. Similarly, Cooper recalled telling plaintiff that the rumored affair had been discussed in that meeting, but he could not recall the details of the discussion or what he might have told plaintiff about it. The prior statement Cooper made to plaintiff was not inconsistent with that testimony, nor was there any evidence that Cooper's faded memory was feigned or due to any collusion with defendants. *See State v. Hutchinson,* 141 Ariz. 583, 587–88, 688 P.2d 209, 213–14 (App. 1984); *State v. Just,* 138 Ariz. 534, 544, 675 P.2d 1353, 1363 (App.1983). Therefore, Cooper's statement to plaintiff was not admissible under Rule 801(d)(1)(A).

We also reject plaintiff's assertions that Cooper's statement to her is admissible under the present sense impression or excited utterance exceptions to the hearsay rule. Ariz.R.Evid. 803(1), (2). Rule 803(1) requires immediacy. *State v. Thompson,* 146 Ariz. 552, 557, 707 P.2d 956, 961 (App.1985). Cooper's statement was made either later the same day as the meeting or possibly a few days later. Given that timing, the statement does not qualify as a present sense impression. It also is not admissible as an excited utterance because there was no evidence that Cooper was "under the stress of excitement caused by [a startling] event or condition" when he spoke with plaintiff. Ariz.R.Evid. 803(2); *State v. Rivera,* 139 Ariz. 409, 413, 678 P.2d 1373, 1377 (1984).

The only evidence of Adams' allegedly defamatory statement in February 1991 is based on inadmissible hearsay. Therefore, the trial court did not err in entering summary judgment for defendants on that claim.

---

1. *See State v. Moran,* 151 Ariz. 378, 728 P.2d 248 (1986) (in prior statement daughter stated that her father sexually abused her; at trial daughter recanted her accusations); *State v. Acree,* 121 Ariz. 94, 588 P.2d 836 (1978) (in prior statement witness said defendant pointed a gun at her and tried to shoot her; at trial witness testified that defendant never pointed a gun at her and she did not believe he would have shot her); *State v. Thompson,* 167 Ariz. 230, 231, 805 P.2d 1051, 1052 (App.1990) (in prior statement brother of molestation victim told school authorities that he was "glad this is over" and that he had wanted to report his sister's molestation to the police himself; at trial he testified that he had not seen anything unusual on the night of the incident and that he had not spoken with anyone about it).

### B. *Failure to Pay Wages/Treble Damages Claim*

Under the teacher's contract which plaintiff was offered and which she conditionally accepted for the 1991–92 school year, she received $14,286 less than what she was paid for the previous year. Thus, plaintiff contends the contract violated A.R.S. § 15–544, entitling her to treble damages under A.R.S. § 23–355. The trial court granted summary judgment for defendants on the failure to pay wages claim and dismissed the treble damages claim under Rule 12(b)(6).

A.R.S. § 15–544(A) provides in part:

[N]o reduction in the salary of a certificated teacher who has been employed by the school district for more than the major portion of three consecutive school years shall be made except in accordance with a general salary reduction in the school district by which he is employed, and in such case the reduction shall be applied equitably among all such teachers.

Because plaintiff was a certificated teacher for the 1990–91 school year within the meaning of A.R.S. § 15–501(2), and because she was employed by the District for more than three consecutive years, she contends that the District was prohibited from reducing her salary for the 1991–92 school year. According to plaintiff, that prohibition is not limited to persons who have been employed as certificated teachers for three consecutive school years.

■■■ We disagree with plaintiff's interpretation of the statute. "Statutory provisions are to be read in the context of related provisions and of the overall statutory scheme," and "[t]he goal is to achieve consistency among the related statutes." *Goulder v. Arizona Dep't of Transp., Motor Vehicle Div.,* 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993), *aff'd,* 179 Ariz. 181, 877 P.2d 280 (1994).

The phrase "who has been employed by the school district for more than the major portion of three consecutive school years" in § 15–544(A) modifies the phrase "certificated teacher;" and the last phrase of that subsection refers to "all such teachers." In enacting Title 15, the legislature differentiated between two classes of certificated teachers: one who has been employed for more than the major portion of three consecutive school years and one who has not. *See* A.R.S. §§ 15–536, 15–538, 15–538.01, 15–544; *Mish v. Tempe Sch. Dist.,* 125 Ariz. 258, 609 P.2d 73 (App.1980).

■■■ The prohibition against a reduction in salary applies only to those who have been certificated teachers for more than three consecutive school years. Because plaintiff had been an administrator for the previous six years, the District was not statutorily prohibited from reducing her salary, and the trial court did not err in granting summary judgment for defendants on her claim for failure to pay wages. Similarly, the court did not err in dismissing her claim for treble damages under A.R.S. § 23–355, since it was based solely on the alleged violation of § 15–544(A).

### C. *Denial of Continuing Status*

Plaintiff alleged that her 1991–92 contract wrongfully "deprived her of vested job security" by not affording her continuing status, or tenure. The trial court properly entered summary judgment for defendants on that claim.

■■■ School boards and district superintendents only have the authority granted to them by statute. *Campbell v. Harris,* 131 Ariz. 109, 112, 638 P.2d 1355, 1358 (App. 1981); *Godbey v. Roosevelt School Dist. No. 66,* 131 Ariz. 13, 19, 638 P.2d 235, 241 (App. 1981). No statute permits granting continuing teacher status to a teacher who does not qualify for that status. Only certificated teachers who have been employed by the school district for more than the major portion of three consecutive school years are entitled to continuing teacher status. *See* A.R.S. §§ 15–536, 15–538.01; *Mish,* 125 Ariz. at 261–62, 609 P.2d at 76–77. Because plaintiff admittedly was not qualified for continuing status, neither the District nor Adams was empowered to grant her tenure when she was offered and accepted the 1991–92 teacher's contract. *Cf.* A.R.S. § 15–546 ("[N]o person shall be deemed to have acquired any vested right to continuing em-

ployment under or by virtue of any provision of this article.").

Plaintiff's contention that a school district is authorized to give three-year contracts to certain administrators under A.R.S. § 15–503 is unavailing. Plaintiff was offered a teacher's contract, not an administrator's contract, for the 1991–92 school year. Under the Arizona statutes pertaining to teacher contracts, she was not entitled to a contract for any term longer than one year. *See* A.R.S. §§ 15–536, 15–538.01.

▮ Equally unavailing is plaintiff's claim that the District granted a male teacher continuing status when he returned to teaching from an administrative position even though he had not earned continuing status prior to accepting the administrative position. The trial court did not err in denying plaintiff's motion under Ariz.R.Civ.P. 56(f), 16 A.R.S., for discovery to explore those issues, since they were irrelevant. Any evidence relating to the District's mistakenly or improperly granting continuing status to another teacher is not relevant to whether plaintiff was entitled to tenured status in her 1991–92 contract.

### D. *Intentional Interference with Contract*

Plaintiff alleged that Adams tortiously interfered with her existing employment relationship by the following acts: refusing to offer her a pure administrator's contract for the 1990–91 school year in violation of A.R.S. § 15–503(D), instead offering her an Associate Principal/Teacher position and reassigning her to full-time teaching duties; reducing her compensation for the 1991–92 school year in violation of A.R.S. § 15–544 and failing to accord her continuing status; slandering and ridiculing her; singling her out for discipline although her performance was no different from other administrators; and subjecting her to threats of termination from September 1990 through February 1991.

Plaintiff essentially claims the right to successive, uninterrupted renewals of her administrator's contract, with the same terms and conditions from year to year. Relying on *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 710 P.2d 1025 (1985)

and *Bernstein v. Aetna Life & Casualty,* 843 F.2d 359 (9th Cir.1988), she contends that fact issues existed as to whether Adams wilfully, intentionally and improperly interfered with that business expectancy and her employment relationship, thus precluding summary judgment on this claim. We disagree.

▮ To establish a *prima facie* case of intentional interference with contractual relations, a plaintiff must prove: the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. *Antwerp Diamond Exch. v. Better Business Bureau,* 130 Ariz. 523, 529–30, 637 P.2d 733, 739–40 (1981). In addition, the interference must be "improper as to motive or means" before liability will attach. *Wagenseller,* 147 Ariz. at 388, 710 P.2d at 1043.

▮ Because plaintiff was not a tenured teacher, she had no right to continued employment. In addition, if further employment were offered, she had no right to the same terms and conditions as her previous employment. Contrary to plaintiff's assertions, she had no right to, or reasonable expectation of, unqualified renewal of her administrator's contract for an indefinite duration. As discussed above, the District's decisions not to renew plaintiff's administrator's contract, to alter her duties and to reduce her salary in 1991–92 did not violate Arizona law. That Adams was responsible for and recommended those changes to plaintiff's employment relationship with the District does not mean he tortiously interfered with that relationship.

As superintendent, Adams had the right and obligation to make recommendations to the District board regarding plaintiff and other District employees. In so doing, Adams acted within the course and scope of his employment. Although plaintiff's amended complaint alleged alternatively that Adams may have been acting outside the scope of his employment, no facts were presented to support that allegation.

In *Mintz v. Bell Atl. Sys. Leasing Int'l,* 183 Ariz. 550, 905 P.2d 559 (Ct.App.1995), Division One of this court held that because a supervisor was acting in the course and scope of his employment when he failed to promote the employee, and because the employer could not be liable in tort for that failure, the supervisor could not himself be liable for intentional interference with the plaintiff's employment contract. *Id.* at 555, 905 P.2d at 564. As the court noted: "To apply *Wagenseller* and *Bernstein* as argued by [plaintiff] would create quite an anomaly: although having no claim against the company for the supervisor's failure to promote her, [plaintiff] would have an intentional interference claim against the supervisor himself." *Id.*

■ Following *Mintz,* we reject plaintiff's similar claim here. The District is not liable for its adoption and implementation of Adams' recommendations made in his role as superintendent. Although the recommendations adversely affected plaintiff's employment relationship, they were not "improper" and do not support a claim against Adams for intentional interference with contractual relations. *See Leaming v. Unified Sch. Dist. No. 214,* 242 Kan. 743, 750 P.2d 1041 (1988) (affirming summary judgment in favor of a superintendent on a claim for intentional interference with teaching contract when, although the contract was terminated, plaintiff's contract rights were not violated); *cf. Hampton v. Glendale Union High Sch. Dist.,* 172 Ariz. 431, 436, 837 P.2d 1166, 1171 (App. 1992) ("[W]here breach of a contract is caused by an act which a person has a definite, legal right to do without any qualification, there is no liability for inducing such breach.") (*quoting Ulan v. Lucas,* 18 Ariz. App. 129, 130, 500 P.2d 914, 915 (1972)). The trial court did not err in granting summary judgment for defendants on the interference with contract claim.

E. *Intentional Infliction of Emotional Distress*

■ In her claim for intentional infliction of emotional distress, plaintiff relied on

essentially the same facts as those she cited for her intentional interference with contract claim. The tort of intentional infliction of emotional distress requires proof of extreme and outrageous conduct by the defendant; defendant's intent to cause emotional distress or reckless disregard of the near certainty that such distress will result from defendant's conduct; and resulting severe emotional distress. *Ford v. Revlon,* 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). The trial court determines whether the alleged acts are sufficiently extreme and outrageous to state a claim for relief. *Mintz,* at 552–555, 905 P.2d at 561–64.

■ The facts plaintiff presented do not support a claim. The recommendations and decisions on nonrenewal of her administrator's contract, the changing of her duties and the reduction of her salary not only were lawful, they were not extreme or outrageous conduct.; nor were Adams' statements that "nobody likes you" and "you piss people off." The trial court did not err in granting summary judgment on that claim.

F. *Claims Under 42 U.S.C. § 1983*

Plaintiff's amended complaint alleged a new claim for violation of 42 U.S.C. § 1983,[2] based on the following contentions:

— Defendants violated state law (A.R.S. § 15–503(D)) by failing to notify her by April 15, 1990 that she would not be offered a new administrative contract and thereafter (on April 27, 1990) reassigning her from administrative work to full-time classroom teaching.

— Defendants discriminated against plaintiff and violated her equal protection rights when they demoted her from administrator to classroom teacher in March 1991 and refused to grant her continuing status, despite having granted a similarly situated male administrator tenure upon his return to classroom teaching.

---

2. 42 U.S.C. § 1983 provides in part: "Every person who, under color of any statute, ... custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress."

— Defendants "engaged in a course of conduct designed to defame, embarrass, humiliate, and degrade Plaintiff, and interfere with the performance of her duties as an administrator and as a classroom teacher, and engaged in a deliberate and calculated attempt to remove Plaintiff from her position as an employee of the District or adversely affect the terms and conditions of employment without substantive or procedural due process."

Defendants moved to dismiss the claims, contending that plaintiff had no property right and consequently no cognizable claim for violation of her right to due process and that, as a matter of law, the District was not liable for discrimination in refusing to perform an illegal act. The trial court granted defendants' motion, and we affirm that ruling.

### 1. Equal Protection

 Plaintiff's equal protection claim fails because it is based on the District's refusal to perform an illegal act—granting her continuing status as part of her 1991–92 teacher contract when Arizona statutes did not authorize that. Because school districts do not have power to extend tenure to employees who do not meet the statutory requirements for that status, *Mish,* 125 Ariz. at 263, 609 P.2d at 78, that the District may have improperly granted tenure to a similarly situated male teacher does not support plaintiff's § 1983 claim. Plaintiff has cited no authority, nor have we found any, for the proposition that a school district may be held liable for violation of equal protection in refusing to perform an act it has no power to perform. Plaintiff's claim based on that premise was properly dismissed.

### 2. Procedural Due Process

 Plaintiff contends that she had a "right to procedural due process prior to a disciplinary change in employment status."[3] In order to state a claim for a violation of

procedural due process, a plaintiff must first establish that she or he has a protected property right. *Hillis v. Stephen F. Austin State Univ.,* 665 F.2d 547, 552 (5th Cir.), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). Plaintiff had no protected property right in her position or salary. *Id.* Under Arizona law, nontenured teachers and administrators do not have a property right in continued employment, and A.R.S. § 15–503(D) does not create one. *Petroni v. Board of Regents,* 115 Ariz. 562, 566, 566 P.2d 1038, 1042 (App.1977). *See also Hilton v. Pine Bluff Pub. Sch.,* 796 F.2d 230 (8th Cir.1986); *Kilcoyne v. Morgan,* 664 F.2d 940 (4th Cir.1981), *cert. denied* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982).

 Plaintiff also had no property interest in her job assignments. *Brown v. Brienen,* 722 F.2d 360, 365 (7th Cir.1983). Mere transfers and reassignments do not implicate a constitutionally protected property interest. *See, e.g., Huang v. Board of Governors,* 902 F.2d 1134 (4th Cir.1990) (transfer of tenured professors from one department to another does not implicate any property interest protected by the due process clause); *Garvie v. Jackson,* 845 F.2d 647 (6th Cir.1988) (demotion from department chairman to professor not a denial of a protected property interest); *Dooley v. Fort Worth Independent Sch. Dist.,* 686 F.Supp. 1194 (N.D.Tex.1987), *aff'd* 866 F.2d 1418 (5th Cir.), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989) (teacher reassigned to nonteaching position not deprived of property interest). Thus, plaintiff had no constitutionally protected property interest in doing solely administrative work, and her reassignment to classroom teaching does not implicate such an interest.

 Plaintiff contends that her due process rights were violated because the District's policies required Adams to base assignment and transfer decisions on the needs of the school or the District's best interests and to promulgate rules for notice, hearing and appeal procedures. A property interest

---

**3.** Plaintiff does not specify what type of procedure allegedly was required and denied her, other than claiming entitlement to a "name clearing" hearing if an employment decision is based on allegations of immorality. There was no evidence that defendants' actions were based on any such allegations or on the defamatory comments

attributed to Adams. In any event, defamation of an individual by a public official is insufficient to invoke the guarantees of procedural due process absent deprivation of some property right. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Sims v. City of New London,* 738 F.Supp. 638 (D.Conn.1990).

is not established by general statements in policy handbooks, however, but rather is created only when an employer's discretion is clearly limited by specific conditions. *Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 589 (7th Cir.1992). Subjective criteria do not create property interests. *Id.* at 590. The District's policies here were insufficient to create a property right protected by the Fourteenth Amendment.

### 3. Substantive Due Process

 Although plaintiff's substantive due process claim is unclear, it apparently is based on her contention that defendants' conduct "shocks the conscience" and is "egregiously unacceptable." The right to substantive due process is only violated when "some *basic and fundamental principle* has been transgressed," and substantive due process rights are created only by the Constitution, not by alleged property rights under state law. *Santiago de Castro v. Morales Medina*, 943 F.2d 129, 131 (1st Cir.1991). This doctrine is to be applied with "caution and restraint." *Moore v. East Cleveland*, 431 U.S. 494, 502, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531, 539 (1977). As the court in *Santiago* noted: " '[w]e should discourage employees from drawing the courts into the day-to-day operations of government' through the adoption of too low a 'threshold for an actionable constitutional violation.' " 943 F.2d at 131 (*quoting Agosto-de-Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1216–17 (1st Cir.1989)).

In *Santiago,* the plaintiff alleged that she was "directly, continuously and consistently harassed ... in many ways" by her supervisor, resulting in extreme mental anguish, humiliation and anxiety. 943 F.2d at 130. In holding that those allegations were insufficient to state a claim, the court stated: "Adoption of the position advocated by the appellant would not only 'make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States,' *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), but would embroil federal courts in everyday workplace disputes between employers and their employees." *Id.* at 131. Those same observations and conclusions apply here. Accepting as true the allegations in plaintiff's amended complaint, they are insufficient to support a claim for violation of any substantive due process rights.

### G. *Punitive Damages*

Plaintiff sought punitive damages for Adams' alleged defamation, tortious interference with contract, and intentional infliction of emotional distress. Having concluded that the trial court properly entered summary judgment for defendants on all the claims upon which the punitive damage request was based, we need not address her arguments about punitive damages. *LaFrentz v. Gallagher,* 105 Ariz. 255, 259, 462 P.2d 804, 808 (1969).

### CONCLUSION

The trial court's judgment is affirmed. In our discretion, we deny defendants' request for attorneys' fees incurred on appeal.

LIVERMORE, P.J., and FERNANDEZ, J., concur.